ARNOLD vs. ELMORE.
ARNOLD vs. ELMORE, and OTHERS.

It is the settled doctrine of this state, that the lands or town or city lots of a purchaser, lying upon the banks of a stream and bounded by it, are presumed to run to the center of such stream, unless the contrary intent appears.

Where A. and others, were the joint owners of lot 6, in sec. 29, bounded on the south and east by the Milwaukee river, and platted it into lots and blocks, leaving a small area not so divided on the plat, lying between blocks 157 and 158 and the river, marked "Bayou," and also another area on said lot marked "Reserved," and subsequently in proceedings for partition of the whole lot, between such joint owners, the commissioners appointed to make such partition, adopted and followed the plat of such joint owners in making a partition, by which they set off to each joint owner in severalty, certain lots and blocks designated by their numbers, stating in their report that the premises so partitioned included "the whole of the lot above described," and they did not assign said area marked "Bayou" specifically to any one, but stated in a note on a plat of said lot attached to their report, that "if the streets, river and proposed canal shall not continue to be used as public highways, then the lots opposite shall be extended to the centre of such street, &c.;" and such report was by mutual consent of the parties to said proceedings confirmed by the court as made. *Held*, in an action by A. claiming as grantee from said joint owners, the area marked "Bayou;" brought against the grantees of the parties to whom the lots opposite and adjoining thereto were assigned, that it was the intention of the original proprietors and joint owners of lot six when they platted

it, as manifested by the plat, and subsequently by the record of partition, that, the lots bounded on the river should extend over the area so marked "Bayou" to the centre of the river, subject to the public easement, and that this intention thus evidenced, could not be controverted by parol evidence.

APPEALS from the Circuit Court for *Milwaukee* County.

Two actions were brought by *Arnold*, one against *Samuel L. Elmore* and others, and the other against *Alexander Elmore*, for the recovery of certain parcels of real estate in the city of Milwaukee. The questions determined are the same, and depend on substantially the same state of facts, in each case. The plaintiff in order to establish his title, showed that on the first day of August, 1835, Float No. 12 was located on lots two and *six* of the south-east quarter of section 29, town 7, range 22, by John B. Genor, and that he assigned the certificate of location to Byron Kilbourn, and that a patent was issued to Kilbourn for said lands on the 20th day of January, 1836. He then gave in evidence a quit claim deed of lot *six*, from Kilbourn to Solomon Juneau, dated August 18, 1835, and a quit claim deed dated November 10, 1847, from said Juneau and George Reed to Lyndsay Ward, of " all that part of said lot *six* which was not laid off in lots and blocks, and set off to proprietors of said lot *six*, in the partition of the same made by the district court for Milwaukee county at the November term, 1837;" and also a deed dated Nov. 30, 1835, from Solomon Juneau and wife to Morgan L. Martin, conveying to said Martin lot *six* aforesaid, and a quit claim deed from said Martin and wife to said Ward, dated June 3, 1850, by which they conveyed to Ward " all that portion of said lot *six* not set off in partition of the said lot among the proprietors thereof, or reserved for streets," and a quit claim deed, dated September 5. 1850, from said Ward and wife to the plaintiff, by which they conveyed to him by the same language used in the last named deed, the same premises last described. The plaintiff then put in evidence the record of a partition suit in the district court for Milwaukee county, for the partition of said lot *six*, in which

Solomon Juneau, Morgan L. Martin, George Reed, Samuel H. Graves, John S. Rockwell, Michael Dousman, Henry W. Cleveland, Cyrus Leland and Onslow Peters were plaintiffs, and *Jonathan E. Arnold*, (the plaintiff in these actions,) Russell Prentice, Herman V. Prentice, and others unknown, were defendants, from which it appears that on the 13th of November, 1837, partition of said lot was decreed according to the prayer of the bill, and William A. Prentice, Joshua Hathaway and Albert Fowler were appointed commissioners to make such partition, and that a commission was issued to them, specifying the rights and interests of the several owners of said lot, directing them, among other things, to cause an accurate survey of the premises to be made, and a careful and just appraisal and valuation of each and every lot and parcel of the premises set off by them to the parties respectively, and to designate on such plat, the lot or lots set off, with the valuation marked thereon; that the commissioners proceeded to perform the duty assigned to them, and made a report of partition of said lot with a plat thereto annexed, which report and plat designated the premises by lots and blocks (the same having been previously platted) set off in severalty to the plaintiff in these actions and each of the proprietors of the lot, which report purported to make partition of the whole of said lot *six*, and at the close of the specification of the different lots set off to the respective owners, the following language occurs in the report: "which includes the whole of the tract above described," (lot 6). This report, as made by the commissioners, was, by mutual consent of the parties, confirmed by the court November 15, 1837. The plaintiff then put in evidence the plat of said lot *six*, made by the proprietors of said lot before said partition proceedings were instituted, and also the plat used by the said commissioners in making such partition, and several other plats of said lot *six*, designating, among other things, the original meander line of said lot, and the location of the street and bridge across the Menomonee river on said lot, which river, it appears, passes

through said lot; and it also appears that the premises claimed by the plaintiff in these actions, are situated on said lot *six*, along the west bank of the Milwaukee river, and that there is an area in front of blocks 157 and 158, and between them and the Milwaukee river, as designated on the plat used in making the partition by a semi-circular line, not laid out in lots and blocks, marked " bayou," and this area is the property claimed by the plaintiff in these actions. There is no mention made in said report of the commissioners, of any part of said lot *six* not laid out in lots and blocks, as set off to any one of the joint owners. Joshua Hathaway, a witness for the plaintiff, testified, that he was one of the commissioners who made the survey and partition of lot *six*, and that he was and had been for twenty-nine years a practical surveyor; was acquainted with government surveys, and had made them. He was asked by the plaintiff, if by looking at the plat of the partition of lot *six*, he could say whether there is any area embraced within that lot, which is not platted into lots and blocks, and set off among the owners thereof? The defendants objected, the court sustained the objection, and the plaintiff excepted. He was then asked why he and the other commissioners left the area in front of blocks 157 and 158, east and south, marked " bayou," not subdivided into lots and blocks, and not set off among the proprietors of said lot *six*? The defendant objected to the question, the court sustained the objection, and the plaintiff excepted. The plaintiff then asked the following question: I observe that all the lots in each of these blocks (157 and 158) are appraised at the same value; did you appraise lot one in each of said blocks, according to its dimensions, as defined in the plat, solely? and did you take into consideration that it covered and embraced any portion of the area in front of and between it and the centre of Milwaukee river? The defendants objected, the court sustained the objection, and the plaintiff excepted.

The witness, on being asked what the semi-circular line on that part of the plat east of lot 1, block 158, represented and meant, answered that it was copied on the plat of the partition, from the proprietor's plat, which was before him at the time; as a surveyor, should say it was the line of a preliminary survey, before the ground was platted, but from my recollection of the locality, it represents a place where the water was shallow and where the line of vegetation appeared above the water, which was of various depths and grown up with aquatic weeds. To the outside was clear water. This line would not always mean the same thing. Where the bank is bold it would represent the water line; as a matter of fact, there was no hard land there, anywhere. During the first three or four years of my residence there, I should think the area in front, east and south of blocks 157 and 158, marked "bayou," was at least six feet deep, and grew deeper as you approached the river. It was further shown in evidence, that more than ten years ago, under the assumed authority of the city, West Water street was extended and opened southerly across the Menomonee river at about lots 6, 7 and 8, of block 158, and thence southerly across said lot six, through said "bayou," and that a bridge had been built and maintained across said Menomonee river, and said street made and filled up through said "bayou," and had been ever since, and still is, used as one of the public streets of said city. It was further shown in evidence, that the premises embraced in the first of these actions are east of and adjacent to, or in other words, east of and adjacent to the parallel line east of, and forty feet from the west line of lot 1 in block 158, as marked on the plat of partition, and had been filled up by Clark Shepardson, who had extended spiles outward in the Milwaukee river, to a point in a line with the dock line on the west side of the Milwaukee river, north of the Menomonee- And it further appeared, that still further to the east of the last mentioned premises, and adjacent thereto, another party, under a conveyance from said

Shepardson, had extended spiles 105 feet, and had filled up, and was in possession and use of the same. And it further appeared in evidence, that the premises embraced in the second of these actions, are east of and adjacent to, or in other words, east of and adjacent to the parallel line east of and 100 feet from the west line of lot 1, block 157, as marked in said plat of partition, in the area marked "bayou," and between said lot 1, so marked, and the extension of West Water street across the Menomonee river, before mentioned. Such notes and indorsements as were made by the commissioners in making such partition, on the plat made by them, and also the reservation noted on the plat of the proprietors of said lot *six*, are stated in the opinion of the court. The plaintiff then rested his case. Whereupon, the defendants moved for a non-suit, which was granted by the court, and the plaintiff excepted to the decision and appealed.

*J. E. Arnold*, in pro. per.

*Wells & Brigham, E. Mariner & Peter Yates*, for respondents.

By the Court, COLE, J.   After the former decisions of this court, but little remains to be said upon the legal questions involved in these cases. For it must now be considered as the settled doctrine of this state, that purchasers of lands lying upon the banks of a stream, and bounded by the stream, are presumed to run to the center of such stream, unless the contrary intent appears. *Jones vs. Pettibone*, 2 Wis., 308. Efforts have been made to restrict this rule, when applied to lots numbered and platted upon a city or town plat, and to induce the court to hold, in such a case, that the lines bounding the lot marked the extent of the grantee's title, but to no purpose. *Mariner vs. Schulte*, 13 Wis., 692; *Walker vs. Shepardson*, 4 id., 486; *Kimball vs. Kenosha*, id., 321. Is there, then, any evidence in these cases to rebut that presumption, and to show that the original proprietors of fraction No. 6, section 27, township 7, in Milwaukee county, when they laid out and

platted that fraction into lots and blocks, intended to reserve any portion of the area east and south of blocks 157 and 158 ? It seems to us that there is no ground for any such presumption in this case, but that the contrary inference is irresistible.

It will be noticed that the proprietors, when they laid out fraction 6 into blocks and lots, did not indicate, by anything on the plat, that this area or bayou was reserved, although an area designated as a basin for the proposed canal was marked " reserved." If a reservation was intended, it is a little remarkable that it was not expressly made upon the face of the the plat, as well in one case as the other. Again, the commissioners appointed to make a partition of these lots among the proprietors, of whom the appellant was one, adopted the plat of the proprietors as showing the property to be divided. They make a division of the lots upon that plat. And in the note which they make on their plat, explaining it, they say the " water lots are 40 feet wide; regular interior lots are 50 feet wide;" and they make the following statement. " It is proposed that if the streets, river and proposed canal should not be continued as public highways, that then the lots opposite shall be extended to the center of such street," &c., &c. This report and partition made by the commissioners has been confirmed, although professing to make a full division of that fraction, No. 6. Now if the proprietors had understood or supposed that there was any part of fraction six not embraced in this division, it is singular that the report, which professed to divide the whole fraction, was not modified so that this fact might become manifest. But instead of this, the report was confirmed, with the note of the commissioners upon their plat, stating that upon the discontinuance of any highway, or river, &c., then the lots opposite should extend to the center of the street or river. What stronger evidence could be afforded, that the original proprietors of fraction 6, when they platted it, intended that the lots bounded by a highway or river should extend to the center of the highway or river, subject of course,

to the public easement, without any reservation whatever, except where it was made for the proposed canal? This is the clear intention manifest from the plat and the record in the partition suit, and of course could not be removed by parol evidence.

The judgment of non-suit, must therefore be affirmed.