### YATES VS. JUDD.

The proprietors of a tract of land in the city of Milwaukee executed a plat on which they designated certain portions of the tract as a part of the Milwaukee river, gave the dimensions of the lots adjoining the river, and delineated them as rectangular, with straight lines bounding them on all sides, and cutting, in places, the curved line which represented the natural edge of the stream. Subsequently, in a partition suit between said proprietors, the commissioners made partition with special reference to the lots, streets, rivers, &c., as designated on said plat, and filed a copy of the plat as part of their report, with a note stating that

Yates vs. Judd.

"if the streets, rivers and proposed canal shall not be continued as public highways, then the lots opposite shall be extended to the center of such streets, &c.," and the report was confirmed without objection. *Held,* that so much of said tract as was delineated as a part of the Milwaukee river, and not included within the boundary lines of any lot, as marked on the plat, was dedicated to the public use as a highway by water.

The establishment by the common council of Milwaukee, after such dedication, of a "dock line" farther within the stream than the line of original dedication, was an acceptance by the public of the dedication, as to so much of the river as was included between such "dock line" and the thread of the stream, and an abandonment of the public easement in so much as lay between the dock line and the line of dedication.

Where a highway, whether by land or water, has been clearly delineated, and its boundaries fixed, if it is not actually passible in its whole extent the public have a right to make it so, and to keep it clear from additional obstructions.

A riparian proprietor of a portion of said tract, who had constructed a dock by filling up, beyond said "dock line," a part of the river, alleged to be, in its natural condition, too shallow for navigation, brought an action against an adjoining riparian owner for damages to his dock caused by the defendant's dredging the stream opposite his own premises. *Held,* that the plaintiff's dock was a public nuisance, and he was not entitled to recover.

COLE, J., dissented.

APPEAL from the County Court of *Milwaukee* County.

The complaint avers that at the time the defendant committed the grievance hereinafter mentioned, the plaintiff was, and still continues to be, possessed of a certain premises in the city of Milwaukee, the eastern line of which is the thread of the Milwaukee river, and the southerly line is the north side of Point street; that the defendant was possessed of a parcel of ground on the opposite or southerly side of Point street; that before that time that portion of said street that passed by the plaintiff's premises, having once been partially covered by the shallow and unnavigable waters of the river, had been filled up and graded for about half its width, namely, the half adjoining the plaintiff's premises, and constituted the only way by which the plaintiff could have access to his premises by land without trespassing upon the lands of other persons; that on the 1st of June, 1857, and on divers other days before the commencement of this action, the defendant wrongfully excavated and dredged said street adjoining plaintiff's premises, to

a great depth, and caused it to be flowed with water; and that, by reason of such excavation and dredging, the plaintiff's premises were undermined, sunk, and wasted away, and said street so destroyed as no longer to afford the plaintiff access to his premises; to his damage, &c.

The answer alleges that the premises described in the complaint as the poperty of the plaintiff are a part of fractional lot 6, section 29, &c.; that said fractional lot 6 was, about the 24th of June, 1837, the property of certain persons named; that said proprietors on that day executed a plat of said lot, on which they laid out and designated the premises described in the complaint, as a part of the Milwaukee river, and dedicated them to the public use as a highway by water; that the river upon said premises was then navigable; that after-wards a part of said proprietors impleaded the others in a suit in the district court of the then territory of Wisconsin for said county, for the partition of said lot 6; that by the consent of the parties to the suit, said plat was adopted by the court, and partition adjudged with reference to the lots, streets, alleys and rivers designated on it; that the premises mentioned in the complaint became thereby dedicated to public use as a highway by water, and were thereafter used by the public as such, and said highway has never since been vacated or abandoned; that afterward the plaintiff wrongfully entered upon a part of said highway, being a part of the premises described in the complaint, and obstructed the same by filling up the bed of the river with earth, driving piles therein, and constructing a dock extending about one hundred feet eastwardly from the west dock line of said river at that place, and occupied the same for private use, and thereby obstructed the defendant from passing over said highway, which is the same possession of the plaintiff that is set forth in the complaint; and that the defendant holds the premises occupied by him as described in the complaint, and which are a part of said lot 6, as lessee of parties who derived title thereto from certain of

the proprietors between whom partition was made as above stated. The answer contains further averments not necessary to be here stated.

On the trial, the plaintiff's evidence tended to show that the premises occupied by him, as described in the complaint, lay east of the "ordinance dock line" established by the common council of Milwaukee along the west side of the Milwaukee river; that the depth of water there, when the plaintiff constructed his dock, was from one and a half to four feet, the average being about three and a half feet; that plaintiff's dock was built up to about four feet above the surface; that it extended south of the north line of Point street a distance varying from fourteen to thirty feet; that in consequence of defendant's dredging not only in front of the lot occupied by him but also in the space between that and plaintiff's dock the latter was partially destroyed, and especially that the ground which the plaintiff had filled in south of the north line of Point street to furnish access to the rest of the premises, and which is described in the complaint as a part of Point street, was washed away. The plaintiff, having been examined as a witness on his own behalf, testified, on cross-examination, that the proprietors of fractional lot 6, section 29, (mentioned in the answer) executed a plat of the same; that a plat then shown him by defendant's counsel was the one so executed; and that said lot 6 had been partitioned among the proprietors, and said plat was adopted by the court in the partition, and made a part of the record therein. The original plat and the record in the partition suit were then introduced in evidence by the defendant. An engraving of part of said plat is given herewith.

It appears that that portion of fractional lot 6 immediately northwest of plaintiff's premises is designated on said plat as block 158, and the block opposite on the southerly side of Point street, as block 157; that all the lots in those blocks, including those adjoining the river, are marked as 100 feet long

Yates vs. Judd.

MENOMONEE

PROPOSED CANAL

BAYOU

POINT

RIVER

MILWAUKEE RIVER

and 40 feet wide; that said lots adjoining the river, like the others in the same blocks, are delineated as rectangular, and their riverward boundaries as straight lines; that the lines so delineated cut in places the curved and waving line which represented the natural edge of the stream, whereas in the case of other blocks on the same plat the riparian lots were not bounded by straight lines on the riverward side, but only by the waving line which represented the water's edge. The most easterly lot in block 158 is delineated on the plat as lot 1, and the premises claimed by the plaintiff were southeast of said lot 1, and were entirely covered by water until filled by him. The premises occupied by the defendant were lot 1, block 157.

The following instruction was asked by the defendant, but refused by the court: "If you find from the evidence that the whole premises in question possessed by the plaintiff are within the limits of the highway as dedicated by the proprietors, and that the public have never by any act abandoned the same, the plaintiff cannot recover." Other instructions involving substantially the same point were also refused. The defendant then asked the court to instruct the jury that he "had a right to dredge carefully, and deep enough to allow the passage of vessels, up to the extension eastward of the center line of Point street, in front of his own lot to the thread of the stream;" but the court modified the instruction by adding that "the defendant would be liable to his neighbor in damages, if, from his so dredging, injury should follow to his neighbor's premises on the other side of the line."

Verdict and judgment for the plaintiff.

*E. Mariner* and *Wells & Brigham*, with whom was *O. H. Waldo*, for appellant:

1. The *locus in quo* is a public highway. (1.) The Milwaukee river is a navigable stream, and as such is a "public highway, forever free." Ordinance of 1787; Const., Art. IX, sec. 1. That it is a navigable stream is a fact of which this court will

take judicial notice.    1 Greenl. Ev., § 6 ; Story's Eq. Pl.,
§ 24 ; *The Apollon,* 9 Wheat., 374; *Peyroux v. Howard,* 7 Pet.,
342.    Many public acts of the territory and state of Wiscon-
sin, and of the United States, recognize it as a navigable
stream.   It was meandered as such by the federal government.
The following acts of the state and territory authorize bridges
over it and provide for draws therein for the passage of ves-
sels : Laws of 1836, p. 47 ; 1838-9, pp. 13 and 126 ; 1839-40,
p. 7 ; 1843-4, p. 39 ; 1845, p. 53 ; 1846, p. 101 ; 1849, p. 38 ;
Local Laws of 1862, p. 332.    The following acts authorizing
bridges provide that they shall not obstruct the navigation of
the river :   Laws of 1851, pp. 126, 272 ; 1852, pp. 317, 386 ;
Local Laws of 1853, pp. 48, 621.    The following judicial de-
cisions recognize it as navigable.    *Walker vs. Shepardson,* 4
Wis., 508-9 ; *Mariner v. Schulte,* 13 id., 708-9.   (2.) This riv-
er is expressly declared to be a public highway and forever
free, &c., by " An act to incorporate the Milwaukee Manuf.
& Hydraulic Co."   Session Laws of 1839, p. 135.   The river,
being a highway, is such in its whole width, from bank to
bank, although some portions are too shallow for some uses ;
just as a street is none the less a highway because it is not
worked and fit for use in its whole width.    Angell on High-
ways, ch. 1, § 56 ; 3 Kent's Comm., 427 ; *Keen vs. Stetson,* 5
Pick., 494; *Lansing v. Smith,* 4 Wend., 21 ; *Comm'rs &c. v.
Long,* 1 Parsons' Select Cases, 143 ; *Stetson vs. Faxon,* 19 Pick.,
147.   (3.) The premises in question are made a public high-
way by water by *dedication* of the owners of the fee and ac-
ceptance by the public.   By the plat made by the proprietors
(and afterwards adopted and recorded by the court, in the
partition suit), the streets, alleys, rivers and proposed canal, as
designated thereon, were dedicated to the public use.   Angell
on Highways, § 142 ;   Laws of Mich., 1833, p. 531 ;   Laws of
1837-8, p. 242.    Those who purchased lots with reference to
such dedication have a vested right to the use of such high-
ways.    *Logansport v. Dunn,* 8 Ind., 378.   The public accepted

this dedication of the river by the establishment of a dock line. This court has already decided in *Arnold v. Elmore*, 16 Wis., 509, that by the plat the entire area is disposed of, and is either set off in lots and blocks in severalty among the proprietors, or is designated for streets, canal, &c. What disposition, then, did the owners intend to make of the space in front of lot 1, block 158, and block 157 ? We say they designed it, as a part of Milwaukee river, for a highway by water. To forestall any claim to the private use of that space because the water is shallow, they marked on the plat the western boundary of that portion of fractional lot 6 which they dedicated to the public as a highway by water. (A.) Wherever they intend lots to be bounded by the stream without specially limiting the line of the stream, they have designated the water boundary by a *waving* line; but where they intended to mark the precise dimensions of the parcels dedicated to the public use, as the streets, proposed canal, &c., they have designated the boundaries by *straight* lines. (B.) Lot 1, block 158, and all the lots in block 157, are marked 100 feet long by 40 feet wide. If the lots in block 157 were intended to be of indefinite length and lot 1, block 158, to be of indefinite breadth, why not leave them unmarked and bounded by waving lines like lot 1, block 147, and the lots in block 146 ? It will not be denied that the length of lots 10, 11, 12 &c., in block 145, was definitely fixed at 130 feet, and that outside of that line was highway. But were the boundaries of those lots more definitely fixed than those of lot 1, block 158, and the lots in block 157 ? Are not the limits of the highway by water in front of block 157 as definitely fixed on the plat as are those of the street east of block 145 ? It is to be observed that the basin which includes the premises in dispute is peculiarly adapted to public use as a mooring ground and winding place for vessels. It is at the junction of two navigable rivers, in the heart of a town that even then bid fair soon to become a crowded mart. It is so covered by water as to be unfit for buildings, and by a little

improvement can be made a most valuable basin for the use of commerce. Can it be doubted that the proprietors, foreseeing the need of just such a place for the public use, dedicated this bayou for that purpose? The fact of its shallowness in some places may have furnished the very reason for such dedication. If it had been actually used then as a navigable stream, it could not possibly have been necessary to dedicate it; but it being shallow, they fixed the boundary by lines and measures that could not be mistaken. (C.) The commissioners who made partition of fractional lot 6 provide on their plat (to which the owners, as parties to those proceedings, assented) that "if the streets, river and proposed canal shall not be continued as public highways, then the lots opposite shall be extended to the center of such streets, &c." This shows that, until it should be abandoned, the owners dedicated the space outside the east line of blocks 157 and 158 to the public use, whether it was in fact navigable or not. They could not have supposed that the then navigable part of the river would ever be abandoned, and could not have intended to provide for that, but for the rights of lot owners in case any or all of this ground covered by shallow water should be abandoned to the public. (D.) The lots on block 157 are designated by the plat as *water lots.**
By that term, we suppose, are meant lots which have a water front—which are approachable by water. As such they have been purchased and are now held. But if the plaintiff and the owners of lots south-east of defendant's premises have a right to fill up to the central and actually navigable part of the river, they can shut the defendant off entirely from the stream. 2. If the premises were a highway by water, the plaintiff's filling was such a nuisance as the defendant might peaceably remove. Angell on Highways, § 274.

*Peter Yates*, in person, and *Matt. H. Carpenter*, of counsel,

---

*This fact and the one stated in the preceding subdivision of the argument, do not appear in the reporter's statement of the case, because the plats are no longer on file in this court, and have never been seen by him.—REP.

contended, that the common law and not the civil law rule as to the rights of riparian proprietors, is in force in this state (R. S., ch. 41, sec. 3): and that a navigable stream is a public highway only as to that part of it which is " of sufficient depth to permit vessels to navigate it" in fact, and where artificial excavation is unnecessary. *Walker v. Shepardson*, 4 Wis., 486, 510; *Mayor of Rochester v. Curtiss*, Clarke, 336; *Spooner v. McConnell*, 1 McLean, 352; *Palmer v. Comm'rs of Cuyahoga Co.*, 3 id., 227; *Comm'rs of Canal Fund v. Kempshall*, 26 Wend., 404; *Canal Comm'rs v. The People*, 5 id., 423. The navigation referred to in this definition is not an occasional passage of skiffs, &c., but navigation " generally and commonly" and with vessels engaged in the " prosecution of commerce essentially valuable." *Weathersfield v. Humphrey*, 20 Conn., 218; *People v. Platt*, 17 Johns., 211; *Rowe v. Granite Bridge Corp.*, 21 Pick., 344. There can be no doubt that Point street extends to the river, i. e. to the navigable part of it, and that the owners of property on each side of it own to the center thereof, subject to the easement of the public as a highway by land; and even " where a city is laid out with streets running to the water, such streets should he held to continue on to the high water, if the city front is afterwards filled in, or the space enlarged by accretion or otherwise." *Wood v. City of San Francisco*, 4 Cal., 190. Point Street not being a public highway by water, and the property on each side of it being entirely private, because in the natural state entirely unnavigable, the plaintiff had the same right, title and interest in Point Street at that place that other lot owners have in the street fronting their premises; and any excavation resulting in special damage affords a cause of action. " No owner of land over which a road passes has right to make any change in it, but in the manner prescribed by law." *State v. Young*, 27 Mo., 259.

*By the Court*, DIXON, C. J. I think the defense in this case fully sustained upon the doctrine of dedication; that the prem-

ises for the injury to which the plaintiff complains, were devoted by the original proprietors to the public use as a highway by water, and consequently that the grading, filling and other works of the plaintiff within the line of such highway, by which it is blocked up and destroyed, were a public nuisance. I do not care to repeat the argument found in the brief of defendant's counsel, which so ably and, in my judgment, unanswerably sustains this conclusion. I am reminded of nothing which I might add, and I am certainly not disposed to qualify or limit any of the propositions of the learned counsel under this head.

I also think that the same conclusion is sustained by the opinion of this court in the recent case of *Arnold v. Elmore*, 16 Wis., 509, with reference to this same plat. Speaking of the original plat and that of the commissioners in partition, and of the effect to be ascribed to them as evidence of the intention and purposes of the proprietors, this question and answer occur : " What stronger evidence could be afforded that the original proprietors of fraction 6, when they platted it, intended that the lots bounded by a highway or the river should extend to the center of the highway or river, *subject of course to the public easement*, without any reservation whatever, except where it was made for the proposed canal ? This is the clear intention manifest from the plat and the record in the partition suit, and of course could not be removed by parol evidence." I still think that document conclusive of the intention of the proprietors, and, as indicated by the question, that highways by land and highways by river, wherever clearly delineated and their boundaries fixed, stand on the same footing, and that it is immaterial whether they are actually passable in the whole extent or not. If not passable, the public have the right to make them so, and for that purpose to see that they are kept clear from additional obstructions and incumbrances. As to highways by land this conclusion is undisputed. The same rule applies with equal force to a highway by water.

The object of the proprietors, wherever they fixed the limits of the highway by water by prescribing the boundaries of lots and blocks adjoining the river, undoubtedly was to give space for improvement, and to allow the navigable channel of the river to be widened to meet the future wants of trade and commerce. To say that the space thus dedicated to improvement by enlarging the navigable capacity of the river, may be filled up and appropriated to private uses, is to defeat the obvious purpose of the proprietors, to deprive the public of manifest and most important advantages, and, in many cases, to injure and defraud the proprietors of adjacent lots, who have purchased relying upon the boundaries fixed by the plat. In this case, the premises occupied by the defendant, though platted and purchased as bordering upon the river, would be entirely cut off from it. The original proprietors having the land between the line of actually navigable waters and the shore at their disposal, it seems to me that there can be no doubt of their power thus to dedicate it. They obviously would have the same power of disposition as over the dry land, and might limit their rights and the rights of their heirs and assigns by the same means. They might estop themselves and their heirs and assigns forever from asserting any dominion over it inconsistent with the public use so long as that use continued, or until it was unequivocally abandoned, though the title still remained. This I understand to be the principle upon which the doctrine of dedication rests (*Connehan vs. Ford*, 9 Wis., 244), and I think it fully applicable here.

Believing, then, that the owners could dedicate, and that they intended to do so, it only remains to be determined whether their acts have been ratified on the part of the public, so as to make the dedication complete. I think they have. The establishment of the "dock line" by the common council of Milwaukee, under the authority granted by the legislature, was a clear acceptance of the lands dedicated. It is true that the "dock line" is within the line of dedication, thus

abandoning a part; but so far as it goes, it is an unequivocal acceptance, and thoroughly establishes the public right.

As to the remarks of this court in *Walker vs. Shepardson*, 4 Wis., 511 and 512, to which we are referred by counsel for the plaintiff, that the legislature could not authorize the establishment of a "dock line" within the non-navigable waters of the river without compensation to the riparian owner, it is sufficient to say that the question of a right by dedication is not mentioned. It is as well settled that the public may acquire an easement or use with the assent of the owner without compensation, as that it cannot do so against his will except upon payment of the fair value of the property taken. Both propositions being well established, and the former not noticed, I am bound to assume either that it was not brought to the attention of the court, or that it was inadvertently overlooked. It is never safe to assume a point as decided upon which the opinion is entirely silent. Besides, it appears that what was said upon this subject was regarded by the court as somewhat *obiter*. This may account for any apparent want of care in the examination of the point.

I think the judgment below should be reversed, and a new trial awarded.

COLE, J., dissented.