THE CITY OF JANESVILLE and another, Respondents, vs. CARPENTER, Appellant.

*May 28 — June 21, 1890.*

*Watercourses: Riparian rights: Injunction: Constitutional law.*

1. In an action to restrain the driving of piles in the bed of a river in a city, and the erection thereon of a building fronting on a bridge, a complaint alleging that the flow of water in the river has already been obstructed by bridges and other structures, that the erection of the building in question will lead others to erect similar buildings fronting on the bridges and supported in like manner, until the whole space over said river on both sides of the bridges is occupied thereby, and that by reason thereof the flow of water in the river will be further permanently obstructed, and the interests of the city and its inhabitants greatly prejudiced and injured by obstruction to the circulation of air, and in respect to the dangers of fire and flood and to the public health, and as respects equality of taxation and assessments and the benefits thereof, is *held* not to state a cause of action in favor of the city.

2. Nor does the complaint state a cause of action in favor of a millowner using the water-power furnished by the river, by alleging that the erection of the building by the defendant will cause the waters of the river to set back "to some extent" at the place where the water used to operate the mill is discharged again into the river, where no injury by reason thereof is alleged.

3. The fact that the erection of a building is prohibited by a municipal ordinance is not ground for an injunction against it.

4. Ch. 423, Laws of 1887 (providing that "it shall be unlawful and presumptively injurious . . . to persons and property to drive piles, build piers, cribs, or other structures . . . in Rock river within the limits of the county of Rock, and the doing of any such act

shall be enjoined at the suit of any resident tax-payer without proof that any injury . . . has been or will be caused by reason of such act," and that "the doing of any such act shall also be enjoined at the suit of any owner or lessee of the right to use water of said river to operate any mill . . . within said county, without proof of any further fact than that such act will cause the water of said river to rise or set back to some extent at the place where the water used to operate said mill . . . is discharged into said river"), is unconstitutional and void:

(1) It deprives riparian owners of their property without compensation or due process of law, and without giving them any remedy, in violation of art. V, XIV, Amendments, Const. of U. S., and secs. 9, 13, art. I, Const. of Wis.

(2) It is a usurpation of the judicial power by the legislature, in violation of sec. 2, art. VII, Const. of Wis.

(3) It is discriminating and class legislation, in violation of the spirit of the constitution and contrary to public justice.

APPEAL from the Circuit Court for *Rock* County.

The case is stated in the opinion. The defendant appeals from an order refusing to dissolve a temporary injunction.

For the appellant there was a brief by *Winans & Hyzer*, and oral argument by *E. M. Hyzer*.

For the respondents there was a brief signed by *Wm. Ruger*, and oral argument by *J. B. Doe, Jr.*, and *Mr. Ruger*. They contended, *inter alia*, that upon the facts stated in the complaint a court of equity should grant an injunction, independent of any statute. *Williams v. Smith*, 22 Wis. 595; *Potter v. Menasha*, 30 id. 492; *Pettibone v. Hamilton*, 40 id. 415; *In re Eldred*, 46 id. 541; *Watertown v. Cowen*, 4 Paige, 510; *Rochester v. Erickson*, 46 Barb. 92; *Gillespie v. Forrest*, 18 Hun, 110; Wood on Nuisances, secs. 602, 779, 781; High on Injunctions, secs. 795, 813, 816, 818, 819, 834, 1555; Story's Eq. Jur. sec. 927. The following statutes are applicable: R. S. secs. 1596, 1607; Laws of 1882, ch. 221, subch. 4, sec. 3, par. 36; Laws of 1887, ch. 423. These statutes assume the right of the legislature to declare that Rock river, within the limits of the plaintiff city, is a navigable river

and public highway. The power of the legislature so to declare is recognized by the decisions of this court. *Barnes v. Racine*, 4 Wis. 465–6; *Wis. R. Imp. Co. v. Lyons*, 30 id. 67; *State v. Carpenter*, 68 id. 171. The legislature also had the right to make the remedy by injunction legal or statutory relief. Cooley's Const. Lim. 361–2; *Andrews v. Farmers' L. & T. Co.* 22 Wis. 288; *Denner v. C., M. & St. P. R. Co.* 57 id. 218; *Stadler v. Grieben*, 61 id. 500.

ORTON, J. It is charged in the complaint as follows: Many years since a building known as the "Myers Building" was erected on the southerly side of and adjoining Milwaukee-Street bridge, in the city of Janesville, over the center of Rock river, as the same flowed in its natural state. Said building is forty feet in width, and is supported by large stone piers resting on the bed of said river, and which have so obstructed its flow as to cause a large sand-bar to form in said river, near to and on the down-stream side of the building. Within the period of three years last past, the defendant, *Edwin F. Carpenter*, erected a building south of and adjoining the southerly side of said bridge at or near its easterly end, forty feet in width, fronting on said bridge, and extending southerly over said river a distance of 100 feet, and supported by numerous piles driven into the bed of said river, the most westerly of which being in the channel of said river in or near the deepest water in the same, leaving a vacant space about eighty-seven feet in width between the westerly side of said building so erected by the defendant and the easterly side of said Myers building. The defendant threatens that he will, without the permission of or an order from the common council of said city, drive numerous piles into the bed of said river, and erect thereon a building south of and adjoining the southerly side of said Milwaukee-Street bridge, and extending from said building so heretofore erected by him, to said Myers

building, and having a frontage of eighty feet or more on said bridge, and extending over and down said river for a distance of about 100 feet, and commenced the driving of piles in the bed of said river for such purpose. The consequences of permitting the defendant to so erect said building, as affecting the interests of the city of Janesville, *will be that others* will soon erect buildings fronting on said bridges, and supported in like manner, until the whole space over said river, on both sides of said bridges, is occupied by similar buildings fronting on said bridges, and extending up and down said river a distance of about 100 feet from the sides of said bridges; *and by reason thereof* the flow of the water in said river will be further permanently obstructed, and the interests of said city and its inhabitants greatly prejudiced and injured by obstruction to the circulation of air, and in respect to the dangers of fire and flood, and to the public health, and as respects equality in the matter of taxation and assessments and the benefits thereof; and that said building will be in violation of an ordinance of said city against erecting any buildings in said river. As affecting the interests of the other plaintiff, the *Janesville Cotton Mills*, it is alleged that the erection of said building will cause the waters of said river to set back "*to some extent*" at the place where the water used by said *Janesville Cotton Mills* is discharged into said river.

In the affidavit of Edward Ruger, a civil engineer, in support of the complaint, it is stated that said building would, *to some extent*, cause the water to set back to such place, and in his affidavit procured by the defendant it is stated that said building would cause the water to set back on the water-wheels of said *Janesville Cotton Mills* "*to some extent, but to what extent he could not then say, but it would be slight.*" It is alleged, also, that the *Janesville Cotton Mills* is a tax-payer of said city and a corporation, and that Rock river is a public highway, and has been returned as

The City of Janesville and another vs. Carpenter.

navigable, and has been meandered, and for a great many years a dam across said river, about seventy rods above said bridge, has existed by lawful authority, and that a considerable number of mills and factories have received their water-power therefrom, and among them the *Janesville Cotton Mills.*

The complaint shows also that, by the foundation of buildings and the building up within the natural margins of the river on the northerly side of the bridge, the width of the river has already been diminished one third, and the waters have been set back as far as the dam, and that said Milwaukee-Street bridge and Court-Street bridge have obstructed the flow of the river to a considerable extent, and that the abutments and piling thereof in the bed of the river, and the filling in of earth and other materials, and placing the foundations, walls, and piers for the support of buildings, and the throwing in of ashes and other materials in the bed of the river, have greatly obstructed the river between said bridges and other localities, and that there is danger that other buildings and obstructions will be placed in the river by the *example* of the defendant.

These are substantially the material allegations of the complaint on which the circuit court granted a temporary injunction against the erection of said building. The defendant, after answering said complaint, moved that the said injunction be dissolved. The motion was heard upon the pleadings and one affidavit presented by the defendant, and seven affidavits presented by the plaintiffs, and denied. From the order denying said motion this appeal is taken.

The answer denies all of the speculative and predicted consequences which the complaint alleges will follow the erection of said building, and the setting back of the water to any extent, and the effect as to the public health and danger from fire or flood, and the consequences of his pernicious example, and that the river is navigable in fact, and

that the bridges are old and dilapidated and will soon be replaced by iron ones, and some other immaterial allegations; and the other allegations are admitted. The answer then alleges as follows: The Rock river throughout its whole length is crossed and obstructed by dams, bridges, and buildings and other structures, and within the city there have been maintained six bridges resting upon piers and piles, four of which were constructed by the city within the space of a mile and a half, and two of them within the space of forty rods. The lower bridge is known as "Court-Street Bridge," and is about forty rods below the proposed building, and its abutments and approaches are built within the river, and diminish its width so that it is twenty feet narrower at that place than where the defendant's proposed building will be, and three of said bridges are between two dams across the river. The lower dam obstructs the flow of the river so that it is virtually a mill-pond between the dams, and the water is raised upwards of two feet when it sets back to the upper dam, and the proposed building is between these dams. There are numerous buildings and structures along the bank of the river, resting upon piles driven in the bed of the river, among which are certain buildings of the plaintiff, the *Janesville Cotton Mills*, and of other mill-owners, and there is a large sand-bar six feet above the bed of the river, between the cotton-mills and the proposed building. The proposed building will be constructed on piles driven into the bed of the river in line with the piles of said Milwaukee-Street bridge, and the building itself will be above the river. The piles under the said bridge are driven at an angle to the current of the river, and if piles could obstruct the current (which is denied) such a net-work of piles would do so. The defendant acquired his title in fee to the bed of the river where he proposes to build from the riparian owner of the lot, one Thomas Lappin. The defendant pleads, in abatement, that

several causes of action are improperly united in the same
action.

The affidavits in support of the complaint cannot, of
course, go further than the complaint in stating the cause
of action, and therefore need not be specially referred to.
The affiant Edward Ruger made affidavits on behalf of both
parties as to the extent to which the waters of the river
would be set back below the wheels of the *Janesville Cotton
Mills*, and he leaves the question with the qualification that
it would be *slight*, and the extent of it he could not state.
The learned counsel of the appellant contends that the com-
plaint does not show that the proposed building will injure
to any extent either the city of *Janesville* or the *Janesville
Cotton Mills*. The condition of the river as to its uses and
obstructions, other than by the proposed building, are only
material to show that it would be impossible for any one
to state the extent, if any, that the proposed building
would contribute, by example or otherwise, to produce the
consequences, which, if they exist at all, must have already
been produced to their fullest extent by other far more
adequate causes. How can it be said that the proposed
building, standing on piles driven in the river, could, even
by example, affect the general health, cause fires and fresh-
ets, obstruct the circulation of the air, affect the equality
of taxation and assessments, or the general welfare, when,
if any such consequences could be appreciably produced by
it, they must have already been overwhelmingly produced
by a great many far greater obstructions in the river by
dams, bridges, buildings, and other constructions. And
precisely so as to its injury to the water-power of the
*Janesville Cotton Mills*, as to which one of the most compe-
tent civil engineers of the state was unable to say to what
extent it injured it, if at all, and did state that it must be
*slight*. It would seem that if such a comparatively slight
cause would produce any effect whatever, such far greater

obstructions in the river, which have existed for a long time, must have produced all such consequences to a most astounding and alarming extent, and the city must have suffered in its health, and by polluted atmosphere, by unequal taxation, and by fires and floods, to an extent that would have rendered it uninhabitable, and the water-power of the *Janesville Cotton Mills* would have been destroyed. These consequences would have been facts susceptible of proof, and yet the complaint fails to show the existence of any such terrible consequences. What effect, if any, this proposed building by its example may have in any such direction, so as to injure any private or public interest, is left to mere prediction and conjecture. The action does not involve any question of obstruction or injury to navigation, or of injury to any public right. Many of the consequences to the city predicted, would follow as well the erection of said building outside of the river. The complaint does not show that the proposed building would be a private or a public nuisance. The action is based upon the allegations of anticipated injury to the respective plaintiffs, which ought to be prevented by an injunction. It is a private, and not a public, action. I have stated the case more fully, that we may understand what is involved in it and what is not.

In respect to injury to any interest that the city represents, the complaint is very obscure and defective. It is not alleged that the public will suffer by this one building at all, but by a row of buildings which somebody might erect in following the example of the defendant, and so, also, as to danger from fire and flood. That will arise only from "similar buildings, fronting on the bridges, and supported in like manner, and extending up and down the river from the sides of said bridges until the *whole space* over said river on both sides of said bridges is occupied." It is only when such similar buildings erected by others fill that *whole*

*space* that it is claimed in the complaint " dangers by fire and flood, and to the public health, and as respects equality in the matter of taxation and the benefits thereof," will even arise or occur.   The only injury to these interests that is alleged is from what *somebody else* may do in the future through the influence of the defendant's example, and that is a mere prediction or conjecture.   It is not shown how or in what manner such injury could occur.   This is a most remarkable case, and there has never been anything like it. It is not charged that the proposed building will in itself do any harm in any respect whatever, or that the defendant has not the right to build it where he proposes to build it, but that it may possibly be followed as an example by others in building buildings which may possibly do harm.   It would be a *new case* where one had actually done something in itself right and harmless, and he should be sued because others had done something wrong and injurious by following his example, and it would be a *strange* case to enjoin one from doing something right and harmless in itself, be- cause others may possibly do something wrong and injurious by following his example, and yet the latter is the present case.   A mere example is not actionable.   Such is the ac- tion in favor of the city.

That in favor of the *Janesville Cotton Mills* is not based on any real injury to its water-power.   The charge is " that the erection of such proposed building by the said defend- ant at the place and in the manner aforesaid would cause the water of said river to rise and set back to *some extent at the place* where the water used by the said *Janesville Cotton Mills* to operate its said mill is discharged into the river."   It would cause the water to set back *at that place to some extent*.   What harm will it do?   Will it retard the action of the water wheel?   Will it lessen the head or fall of the water-power?   If it would do either, it would have been easy to say so.   It depends upon how high or low the

wheels are set. It is not even inferentially stated that it would be any injury at all to the *Janesville Cotton Mills*. How much will it raise or set back the water at that place? "To *some* extent." The very *least* extent possible is *some* extent. The millionth part of an inch is *some* extent. The very smallest extent susceptible of measurement is *some* extent. It seems probable that this expression in the complaint was furnished by Edward Ruger, the civil engineer who made the affidavit in its support and used the same language, and who in another affidavit qualified it by saying, "to what *extent* he could not state, but it would be *slight*." The word "slight," according to Webster, means "inconsiderable, unimportant." If any injury to the water-power could be inferred from this allegation, it would be too slight for legal cognizance. The complaint states no cause of action against the defendant in favor of the *Janesville Cotton Mills*.

Should a court of chancery enjoin the defendant from erecting his building on his own land, on such an allegation as this? We think the learned counsel of the appellant is right in claiming that the complaint does not charge facts sufficient to state any cause of action known to the general laws of the land and the practice of courts in favor of either plaintiffs. But, even if the complaint sufficiently charged that the consequences predicted would be produced by the proposed building, the city of *Janesville* has no such corporate interest in them as would authorize it to maintain such an action. *Milwaukee v. M. & B. R. Co.* 7 Wis. 85; *Sheboygan v. S. & F. du L. R. Co.* 21 Wis. 667. But it is sufficient that no wrong, injury, or damage is charged. By the extended jurisdiction of the court in equity, by ch. 190, Laws of 1882, amending sec. 3180, R. S., there must be some special injury, or necessity to protect the rights of some person, to grant an injunction. As a private nuisance, or a public nuisance by which some private person has suf-

fered some special and peculiar injury, there must be *material* annoyance, inconvenience, discomfort, or hurt, and the violation of another's rights in an *essential* degree.   Wood, Nuis. 1, 3, 4.   The law gives protection only against *substantial injury*, and the injury must be *tangible*, or the comfort, enjoyment, or use must be *materially* impaired.   *Stadler v. Grieben*, 61 Wis. 500; *Pennoyer v. Allen*, 56 Wis. 502, and many other cases in this court.   It is a maxim of the law that wrong without damage or damage without wrong does not constitute a cause of private action.

It is charged that this building will be in violation of an ordinance of said city.   That would not give a cause of action for an injunction, even if the ordinance so provided. *Waupun v. Moore*, 34 Wis. 450.

The argument of the learned counsel of the respondents, and the authorities cited on the question whether the proposed building will obstruct the navigation of the river, are impertinent to the case.   There is nothing in the case that involves any such question in the remotest degree.   Within any grounds or reasons known to the well-settled principles and practice of equity jurisprudence, the complaint states no case for an injunction, or for any other purpose.   The action is not based on any statute which gives a right of action in such a case.   But the learned counsel of the respondent cites ch. 423, Laws of 1887, in support of the action.   This statute is, if possible, more marvelous than the complaint.   The enactment of the statute was obviously obtained to create just such a right of action, and it is a little singular that it is not referred to in the complaint as the foundation of this action, as the action can stand on nothing else, and this statute most clearly sanctions it, excepting as to the city of *Janesville* as plaintiff.   The first section is as follows: " It shall be unlawful and *presumptively* injurious and dangerous to persons and property to drive *piles*, build piers, cribs, or other structures,  .  .  .

in Rock river *within the limits of the county of Rock*, and the doing of any such act *shall be enjoined* at the suit of any *resident tax-payer without proof* that *any injury or danger has been or will be caused* by reason of such act." The italics are not in the act, and are used to save comment. Sec. 2 is specially appropriate to this action, and is as follows: " The doing of any *such act shall also be enjoined* at the suit of any owner or lessee of the right to use water of said river to operate any mill or factory *within said county*, without proof of any further fact than that such act will cause the water of said river to rise or set back, *to some extent*, at the place where the water used to operate such mill or factory is discharged into said river." The complaint copies this last part as the only *grievance* of the plaintiff, the *Janesville Cotton Mills*. The last section is unimportant. It excepts the building of railway and highway bridges, and the repair and reconstruction of mill-dams across the river, and a pending suit of the *Janesville Cotton Mills* and others against *Edwin F. Carpenter*, probably of subject matter the same as or similar to that of this action.

The learned counsel of the appellant contends that this act is unconstitutional and therefore void. The legislature would have saved time and expense if it had issued the injunction in the case for which the act was made. This is the first time that any legislature of any enlightened country ever attempted to create an action without any *cause* of action, to authorize a complaint to be made to a court when there is nothing to complain of; to compel the courts to enjoin the lawful use and enjoyment of one's own property " without proof that any injury or danger has been or will be caused by reason of such act; " to create a cause of action without wrong, injury, or damage; to authorize an action to be brought by a person without any interest in the subject matter, or privity with the defendant of con-

tract, estate, duty, obligation, or liability, if he is only a resident tax-payer, and to exclude all others who have any interest or privity in the subject matter and are presumptively injured in person or property; to make that act unlawful and actionable in one county and as to one river that is lawful in all other counties and as to all other rivers, under precisely the same circumstances; or to adjudicate and decide the case, and then order and compel the court to execute its judgment by issuing an injunction. These are some of the strange and novel provisions of this statute.

That Thomas Lappin, the owner in fee of this ground, has the right to use and enjoy it to the center of the river in any manner not injurious to others and subject to the public right of navigation, has been too often decided by this court and other courts to be questioned. As a riparian owner of the land adjacent to the water, he owns the bed of the river *usque ad filum aquæ*, subject to the public easement if it be navigable in fact, and with due regard to the rights of other riparian proprietors. He may construct docks, landing places, piers, and wharves out to navigable waters if the river is navigable in fact, and if it is not so navigable he may construct anything he pleases to the thread of the stream, unless it injures some other riparian proprietor or those having the superior right to use the waters for hydraulic purposes. *Jones v. Pettibone*, 2 Wis. 308; *Arnold v. Elmore*, 16 Wis. 509; *Yates v. Judd*, 18 Wis. 118; *Walker v. Shepardson*, 4 Wis. 486; *Wis. R. Imp. Co. v. Lyons*, 30 Wis. 61; *Delaplaine v. C. & N. W. R. Co.* 42 Wis. 214; *Cohn v. Wausau Boom Co.* 47 Wis. 314; *Stevens Point Boom Co. v. Reilly*, 46 Wis. 237; *Hazeltine v. Case*, 46 Wis. 391. Subject to these restrictions, he has the right to use his land under water the same as above water. It is his private property under the protection of the constitution, and it cannot be taken, or its value lessened or im-

paired, even for public use, "without compensation" or "without due process of law," and it cannot be taken at all for any one's *private* use.

1. This statute makes it unlawful for the defendant who owns this ground and has the right to use it under said Lappin, to drive piles into it anywhere within the river for any purpose. It prevents the lawful use of his property. It takes it away from him without compensation or due process of law, and.denies the defendant "the equal protection of the laws." It is therefore in direct violation of articles V and XIV of the amendments of the constitution of the United States, and of .section 13 of article I of the state constitution, and is therefore void. It takes his property away from him, and leaves him no remedy whatever by which he can regain it or obtain redress. It is therefore in conflict with section 9 of article I of the state constitution, which "entitles him to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, *property*, or character." Any restriction or interruption of the common and necessary use of property that destroys its value, or strips it of its attributes, or to· say that the owner shall not use his property as he pleases, *takes it* in violation of the constitution. *Pumpelly v. Green Bay Co.* 13 Wall. 166; *Wynehamer v. People*, 13 N. Y. 378; *People ex rel. Manhattan S. Inst. v. Otis*, 90 N. Y. 48; *Hutton v. Camden*, 39 N. J. Law, 122.

2. The legislature usurped the judicial power of the courts by the enactment of this statute. It adjudicates an act unlawful and presumptively injurious and dangerous, which is not and cannot be made to be so without a violation of the constitutional rights of the defendant, and imperatively commands the court to enjoin it without proof that any injury or danger has been or will be caused by it. It reverses very many decisions of this court on the very questions involved in it, and which have the effect of a judicial deter-

mination of the defendant's rights of property. It violates
section 2 of article VII of the state constitution, which
provides that the judicial power of the state, both as to
matters of law and equity, shall be vested in the various
courts. It takes away the jurisdiction of the courts to in-
quire into the facts and determine the necessity and pro-
priety of granting or refusing an injunction in such a case,
according to the established rules of a court of equity.
*Ervine's Appeal*, 16 Pa. St. 256. It is said in that case:
"That is not legislation which adjudicates in a particular
case, prescribes the rule contrary to the general law, and
orders it to be enforced. Such power assimilates itself
more closely to *despotic rule* than to any other attribute of
government."

3. This statute is discriminating and class legislation, in
violation of the spirit of our constitution, and contrary to
the principles of civil liberty and natural justice. It gives
to a certain class of citizens privileges and advantages which
are denied to all others in the state under like circumstances,
and subjects one class to losses, damages, suits, or actions
from which all others, under like circumstances, are ex-
empted. *Holden v. James*, 11 Mass. 396. Its operation is
restricted and partial to that part of Rock river within the
county of Rock, while said river elsewhere and all other
rivers are excluded. It gives the right of action to the
resident tax-payers of said county while all others are ex-
cluded from the exercise of such right, whatever interest
they may have in the subject matter of the action. It gives
the right of action to the owners or lessees of the right to
use the water of said river to operate any mill or factory
within said county, and excludes all other owners or lessees
of such water-powers by means of said river elsewhere. It
gives to such favored classes the stupendous advantage and
exceptional privilege of maintaining such actions without
proof that any injury or danger has been or will be caused

by reason of such act.   It would be difficult, if not impossible, to crowd into so short a statute any more or greater violations of that principle, so essential to a free government, of "equal, general, and standing laws."   For these reasons this statute is unconstitutional and void.   It is not, perhaps, a violation of any special clause of the constitution. in these respects, but it is a violation of its essential spirit, purpose, and intent, and contrary to public justice.   *Bull v. Conroe*, 13 Wis. 233; *Durkee v. Janesville*, 28 Wis. 464, and cases cited in the opinion.

In this connection I cannot forbear quoting the language of Mr. Justice Chase in *Calder v. Bull*, 3 Dall. 387, 388: " I cannot subscribe to the omnipotence of a state legislature, or that it is absolute and without control, although its authority should not be expressly restrained by the constitution or fundamental law of the state.  .  .  .   The nature and ends of the legislative power will limit the exercise of it.  .  .  .   There are certain vital principles in our free republican government which will determine and overrule an apparent and flagrant abuse of legislative power,— as to authorize manifest injustice by positive law, or to take away that security of personal liberty or private property for the protection whereof the government was established.   An act of the legislature (for I cannot call it a law) contrary to the great first principles of the social compact cannot be considered a rightful exercise of legislative authority."   This language is quoted in the above case of *Durkee v. Janesville*, but it will bear repeating here, as more apt and appropriate than in that case.

It has been suggested that this statute was procured for this case and perhaps like cases in the city of *Janesville*, as if, when the courts deny an injunction, the legislature is made to intervene and enact that an injunction *shall* be granted, and that, too, without proof of injury or danger. It is hard to believe that any one would procure the pas-

sage of such an act or any act of the legislature to circumvent and overrule the courts in cases which have failed for want of any proof of injury.   This act is sought to be sustained as a proper exercise of the police power of the state. The act itself makes no such claim, and has not the remotest reference to any such object or purpose.   It is sufficient to say that such an objectionable statute cannot be sustained by the exercise of any power inherent in or conferred upon the legislature.   The complaint states no cause of action, and therefore the circuit court ought to have sustained the motion to dissolve the injunction.

*By the Court.*—The order of the circuit court is reversed, and the cause remanded with direction to dissolve the injunction, and for further proceedings.