TOWN OF EAST TROY, Plaintiff-Respondent,

v.

Thomas H. FLYNN, Wayne and Connie Raute, Dale Jastroch, Lee Kemp and Albert and Charlotte H. Ormsby, Defendants-Appellants,

William and Vivian WILSON, Defendants,

v.

George GRUBIS, Elizabeth Grubis, Grace Clatworthy, Roderick and Wilma Mann, Dale and Nancy Roble, James and Ester Peterson, Blanche Stevens, Glen and Beth Kreinbrink, Ralph Florence Szewczykowski, Ken and Pat Jarecki and Jeff Drummond, Intervenors-Plaintiffs-Respondents.

Court of Appeals

*No. 91–1800. Submitted on briefs March 9, 1992.—Decided April 15, 1992.*

(Also reported in 485 N.W.2d 415.)

On behalf of the defendants-appellants the cause was submitted on the briefs of *Elizabeth Adelman* of *Adelman, Adelman & Murray, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent and the intervenors-plaintiffs-respondents the cause was submitted on the brief of *Patrick J. Hudec* and *Gabrielle Boehm* of *Hudec Law Offices, S.C.* of East Troy.

Before Nettesheim, P.J., Brown and Anderson; JJ.

ANDERSON, J.   Thomas H. Flynn and other property owners (Flynn, collectively) appeal from a judgment granting a permanent injunction precluding, *inter*

*alia,* a pier from being placed off a strip of land abutting Beulah Lake in Walworth county known as "Beulah Alley." Because we conclude that the trial court misconstrued the 1912 deed and the 1914 plat that conveyed the alley, we reverse the part of the judgment which enjoined the property owners from installing a pier off of the alley. Because the parties do not appeal the part of the judgment which enjoined placing or storing items in the alley and the finding that one property owner's fence encroached on the alley, that part of the judgment is not altered by this opinion.

The facts are undisputed. May and J.D. Learned owned a seven-acre parcel abutting Beulah Lake in the Beulah Lake Park Subdivision. In 1912, the Learneds deeded a strip of land twenty feet by 200 feet extending to the shore of the lake to "Fred W. Harrison, Benjamin Stewart and to the different owners of Beulah Lake Park, their heirs and assigns." The Learneds warranted a clear fee simple title. This strip of land became known as Beulah Alley.

In 1914, the seven-acre parcel was divided into sixteen lots by the same property owners who owned Beulah Alley in fee. The plat contained the following restriction:

> Beulah Alley designated on said Plat . . . represents the same land intended to be conveyed by deed recorded in Volume 135 of Deeds on page 144 of Walworth Co., Wis. records; and is to be for the use of the owners of Beulah Lake Park only, in traveling from said Lot Ten Driveway to the shores of Beulah Lake.

The plat map contained the following language: "Beulah Alley For the use of owners of Beulah Lake Park only." The sixteen lots were arranged such that lot numbers

one through nine abutted Beulah Lake (shoreline owners). Lot numbers ten through sixteen (back lot owners) were located behind the shoreline owners and separated by a road labeled "Lot Ten Driveway."

In 1931, litigation commenced concerning whether property owners adjacent to the subdivision could use the alley. The circuit court found that the plat was properly made and recorded. The court concluded:

> That by the terms of the agreement dated September 5, 1914, and made a part of the plat of Lot Ten Subdivision of Beulah Lake Park, as recorded, said "Lot Ten Driveway" and "Beulah Alley" as therein described, were reserved for the sole and exclusive use of only those living within the confines of the Subdivision, Beulah Lake Park, and owning homes therein, or sufficient property upon which to construct such homes thereon.
>
> . ....
>
> That the restrictions . . . are valid and binding upon the then owners, and upon all subsequent purchasers . . ..

Since 1914, the alley has been used as a right-of-way from the Lot Ten Driveway to the shores of Beulah Lake. Trial testimony in this case indicated that, at least in the later years, Beulah Alley was used primarily by the back lot owners. For many years, the back lot owners placed a pier off of the alley.

In April 1990, the town of East Troy sought a permanent injunction to prevent the installation of a pier off of the alley. Many of the shoreline owners intervened as plaintiffs and joined the town in requesting that the pier installation be enjoined. All of the defendants are back lot owners.

After a three-day hearing, the trial court made the following findings. Flynn, as a back lot owner in the Lake Beulah Park Subdivision, was a nonriparian owner who shared in the benefit of the dedication of Beulah Alley. The intervenors, who are shoreline owners in the Lake Beulah Park Subdivision, also have dedicated to them the use of Beulah Alley. The alley was created and dedicated under the recording of the subdivision plat in 1914 and its benefits inured to all of the subdivision owners. Flynn and his predecessors intermittently used the alley to install a pier by permission for seventy-six years. The pier and mooring of boats interfered with access to the lake.

The trial court made the following legal conclusions. The 1914 plat is valid and binding on each subdivision owner. The plat was recorded pursuant to secs. 101.2261, 101.2268 and 101.2269, Stats. (1915). By following the statute then in effect, the property owners created Beulah Alley as an easement, and therefore the back lot owners did not have the riparian right to maintain a pier off of the alley. Alternatively, the court concluded that if the alley is held in joint ownership by dedication, the plat restriction did not allow for the placement of a pier. The court issued a permanent injunction precluding any current or future subdivision owner from obstructing access to the lake by installing a pier or mooring boats.

Flynn first argues that the town was required to file a complaint with the Department of Natural Resources pursuant to sec. 30.14(1), Stats., instead of bringing an action in the trial court. He argues that because the town bypassed the DNR, the town did not exhaust its administrative remedies and the court was without "jurisdiction."[1]

---

[1]Flynn does not articulate whether the jurisdiction at issue is personal, subject matter, concurrent, primary, or secondary.

Flynn's argument fails. Section 30.14(1), Stats., does not require that the issue of whether a party is a riparian owner be submitted to the DNR.[2] That was the issue presented to the trial court. The town's complaint asserted that Beulah Alley was a strip of land dedicated for access to the lake. The town alleged that Flynn was a nonriparian owner; and therefore, sec. 30.12(1)(a) and (2), Stats., and *de Nava v. DNR,* 140 Wis. 2d 213, 409 N.W.2d 151 (Ct. App. 1987), prevented him from placing a pier off of the alley. Flynn countered that the subdivision owners have a fee simple title in Beulah Alley subject to a restriction, were riparian owners, and therefore could place a pier off of the alley.

Whether Flynn could install a pier rested on whether Flynn was a riparian owner. The resolution of whether Flynn was a riparian owner rested on the application of statutory and common law principles of property law and the legal effect of the 1912 conveyance and the 1914 plat. This question is not within the scope of sec. 30.14(1), Stats. The DNR is equipped to determine whether statutory requirements are met and to allocate the rights of the parties who are already determined to be riparian owners. *See Godfrey Co. v. Lopardo,* 164 Wis. 2d 352, 375, 474 N.W.2d 786, 795 (Ct. App. 1991). This is not a case where property owners, who are already

Because we conclude that sec. 30.14(1), Stats., does not apply, we need not complete Flynn's argument.

[2]Section 30.14(1), Stats., reads:

**Reports of and hearings on violations. (1)** MUNICIPALITIES TO REPORT VIOLATIONS. The governing body of each municipality shall promptly report to the department every violation of s. 30.12 or 30.13 which occurs or which it has reason to believe is likely to occur within the municipal boundaries.

determined to be riparian owners, are potentially violating secs. 30.12 and 30.13, Stats. *See* sec. 30.14(1) and (2).

The central issue on appeal is the legal effect of the 1912 conveyance and the 1914 plat. The meaning of unambiguous documents is a matter of law which we review *de novo*. *Negus v. Madison Gas & Elec. Co.*, 112 Wis. 2d 52, 60, 331 N.W.2d 658, 663 (Ct. App. 1983).

There is no dispute that the 1912 deed conveyed fee simple title to the different subdivision owners of Beulah Lake Park, their heirs and assigns. The 1914 plat, signed by all the different subdivision owners of Beulah Lake Park, dedicated the alley with a restriction to each individual subdivision owner, his or her heirs and assigns. Sections 101.2260 and 101.2263, Stats. (1913), allowed the owner or owners of land to subdivide the land and dedicate certain property to any individual or individuals. Section 101.2263 also allowed the owners to restrict the land's use. The law stated:

> Title to land marked as donated . . .. When any map shall have been made, certified, signed, acknowledged and recorded [according to] this chapter prescribed every *donation or grant to . . . any individual or individuals* . . . marked or noted as such on said plat or map shall be deemed in law and in equity a *sufficient conveyance to vest the fee simple of all such parcel or parcels* of land as are therein expressed . . . for the uses and purposes therein expressed and intended and *no other use or purpose whatever* . . .. [Emphasis added.]

Section 101.2263, Stats. (1913).[3] The 1931 judgment determined that the plat was properly made, recorded, and enforceable. The restrictions accompanied the dedi-

---

[3]The current version of this statute is sec. 236.29, Stats.

cation of the alley in the plat. After the plat was recorded, each owner of Beulah Lake Park, his or her heirs and assigns, owned a fee simple title in the alley. Consequently, each owner of Beulah Lake Park has a fee simple title in Beulah Alley with the accompanying restriction as stated in the plat.

Therefore, when the subdivision owners of Beulah Lake Park subdivided the seven-acre lot by the 1914 plat and gave each other a fee simple title in the alley, they could not have granted an easement to themselves. An easement is a permanent interest in *another's land.* *Hunter v. McDonald,* 78 Wis. 2d 338, 343, 254 N.W.2d 282, 285 (1977). An easement is a liberty, privilege or advantage in land *existing distinct from the ownership* of the soil. *Colson v. Salzman,* 272 Wis. 397, 401, 75 N.W.2d 421, 423 (1956). Therefore, the alley is not an easement.[4]

Because each subdivision owner has a fee simple title in Beulah Alley, each owner is a riparian owner. A riparian owner is the owner of land abutting a natural

---

[4]It is a common law property rule that if the same party who owns the easement also owns the fee of the same property, there is merger and the easement is extinguished. *See* R. Cunningham, W. Stoebuck and D. Whitman, *The Law of Property* sec. 8.12, at 465 (1984). Had the owners of the subdivision granted an easement to themselves, the easement would have extinguished because they remained the owners of the fee.

Furthermore, if all the property owners of the subdivision merely owned an easement over the alley, then the owner of the servient estate has not been identified. Title to land must be held by someone or some entity. The public cannot be the owner because, as the 1931 judgment held, the alley is for the exclusive use of the owners of the subdivision.

338

lake. *See Mayer v. Grueber,* 29 Wis. 2d 168, 173–74, 138
N.W.2d 197, 202 (1965). A riparian owner has the right
to build wharves and piers in aid of navigation. *State v.
Bleck,* 114 Wis. 2d 454, 466, 338 N.W.2d 492, 498 (1983).
Therefore, *de Nava* and sec. 30.131, Stats., do not pre-
vent the installation of the pier.

The restrictive language in the plat does not pro-
hibit the installation of a pier. Restrictions contained in
the plat must be strictly construed in favor of unencum-
bered and free use of the property. *See Crowley v.
Knapp,* 94 Wis. 2d 421, 434, 288 N.W.2d 815, 822 (1980).
A restriction which purports to operate in derogation of
the free use of property must be expressed in clear,
unambiguous, and preemptory terms. *Id.* at 435, 288
N.W.2d at 822. The restriction does not address piers. A
pier does not affect the owners' ability to travel to and
from the lake's shore. Therefore, we conclude that the
restriction does not prohibit the installation of a pier.

The town and the intervenors argue that our deci-
sion should be controlled by *Yurmanovich v. Johnston,*
19 Wis. 2d 494, 120 N.W.2d 707 (1963). We disagree.
The crucial difference in the facts between *Yurmanovich*
and this case is that in the former, the owners of the land
granted the easement to *other parties. See id.* at 500–01,
120 N.W.2d at 710–11. Here, the same group of people
that owned the subdivision could not have granted an
easement to themselves. They owned the fee simple title
before and after the plat was recorded. Therefore,
*Yurmanovich* is not controlling.

We stress that the issue before this court is narrow
and limited to whether the subdivision owners are ripa-
rian owners and consequently have the common law
right to install a pier off of the alley. They may do so,
however, only in compliance with local ordinances and

339

with the state laws and regulations. It is for the DNR to allocate the riparian rights in the event of a conflict. Finally, we stress that both the back lot owners and the shoreline owners own the alley in fee simple and that no subdivision owner has any more rights than any other subdivision owner.

Because we conclude that Flynn is a riparian owner and has the right to install a pier off of the alley, we do not address whether laches prevented the city and the intervenors from bringing this action. Furthermore, the issue presented and briefed to this court was limited to whether the subdivision owners had the legal right to install a pier off of Beulah Alley. Because the part of the judgment prohibiting the placing of any temporary or permanent obstruction in the alley which would interfere with access to the lakeshore, including any fence encroachment, is not altered on appeal, that part of the judgment is unaffected by this decision.

Costs are awarded to the defendants-appellants.

*By the Court.*—Judgment affirmed in part; reversed in part.