**2022 WI APP 39**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:          2021AP1027

Complete Title of Case:

> JACK KAPINUS, RENEE KAPINUS AND KAPINUS FAMILY TRUST,
>
>    PLAINTIFFS-RESPONDENTS,
>
>    V.
>
> JOSEPH NARTOWICZ, KAREN NARTOWICZ, GINA NEWELL AND
> ROBERT NEWELL,
>
>    DEFENDANTS-APPELLANTS,
>
> CHAZZ HUSTON, ERIC FITZGERALD, SHANNON FITZGERALD,
> DAVID MINEAR ROAHEN AND LUCY M. FLESCH REVOCABLE TRUST,
> DAVID M. JUNCK, STEVEN D. ALF, SHANNON R. ALF,
> HARRY E. VAN CAMP, SUSAN S. GEORGE, BRIAN E. PENINGTON,
> TONYA N. PENINGTON, ADRIENNE R. HAMPTON, SARAH M. DORN,
> JONATHON CORNELL, JILL CORNELL, KRISTIN M.
> KERSCHENSTEINER, SUZANNE M. BREWER, RICHARD F. & DORIS L.
> MCLAUGHLIN LIVING TRUST, JACQUELINE P. MOORE, JONATHAN C.
> SCHMIDT, JENNIE E. SCHMIDT, DON GOBEN, JULIE R. KUBICEK,
> SAJS TRUST AND AMY & KEVIN COOMBE REVOCABLE LIVING TRUST,
>
>    DEFENDANTS.

| | |
|---|---|
| Opinion Filed: | June 3, 2022 |
| Submitted on Briefs: | November 19, 2021 |

| | |
|---|---|
| JUDGES: | Blanchard, P.J., Kloppenburg, and Fitzpatrick, JJ. |

Appellant
ATTORNEYS:     On behalf of the defendants-appellants, the cause was submitted on the briefs of *Josh C. Kopp* of *von Briesen & Roper, S.C.*, Madison.

Respondent
ATTORNEYS:     On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Nicholas J. Loniello* and *Max A. Meier*, of *Loniello, Meier & Associates, LLC*, Madison.

## COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 3, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1027**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CV1085

**IN COURT OF APPEALS**

---

JACK KAPINUS, RENEE KAPINUS AND KAPINUS FAMILY TRUST,

    PLAINTIFFS-RESPONDENTS,

  V.

JOSEPH NARTOWICZ, KAREN NARTOWICZ, GINA NEWELL AND ROBERT NEWELL,

    DEFENDANTS-APPELLANTS,

CHAZZ HUSTON, ERIC FITZGERALD, SHANNON FITZGERALD, DAVID MINEAR ROAHEN AND LUCY M. FLESCH REVOCABLE TRUST, DAVID M. JUNCK, STEVEN D. ALF, SHANNON R. ALF, HARRY E. VAN CAMP, SUSAN S. GEORGE, BRIAN E. PENINGTON, TONYA N. PENINGTON, ADRIENNE R. HAMPTON, SARAH M. DORN, JONATHON CORNELL, JILL CORNELL, KRISTIN M. KERSCHENSTEINER, SUZANNE M. BREWER, RICHARD F. & DORIS L. MCLAUGHLIN LIVING TRUST, JACQUELINE P. MOORE, JONATHAN C. SCHMIDT, JENNIE E. SCHMIDT, DON GOBEN, JULIE R. KUBICEK, SAJS TRUST AND AMY & KEVIN COOMBE REVOCABLE LIVING TRUST,

    DEFENDANTS.

---

APPEAL from a judgment of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Affirmed*.

Before Blanchard, P.J., Kloppenburg, and Fitzpatrick, JJ.

¶1 KLOPPENBURG, J. This case arises from a dispute regarding the rights of owners of residential lots (the "lot owners") created by the plat of Wa-che-etcha as to three non-residential lots (the "lake access lots") created by the plat.[1] Jack and Renee Kapinus, individually and as trustees of the Kapinus Family Trust, sued Joseph and Karen Nartowicz alleging causes of action for private nuisance, public nuisance, and trespass, and seeking declaratory judgment in connection with the Nartowiczes' pier and boat hoist facilities (the "Nartowicz pier") that have been seasonally erected at the shore line of one of the three lake access lots, which is adjacent to and shares a common boundary with the residential lot owned by Kapinus.[2]

¶2 Kapinus argued in a motion for summary judgment that the Nartowiczes and the rest of the lot owners have an interest in the lake access lots

---

[1] "A plat is a 'map of a subdivision.'" WIS. STAT. § 236.02(8) (2019-20). *State ex rel. Anderson v. Town of Newbold*, 2019 WI App 59, ¶15 n.6, 389 Wis. 2d 309, 935 N.W.2d 856, aff'd, 2021 WI 6, 395 Wis. 2d 351, 954 N.W.2d 323.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] We refer to Jack and Renee Kapinus and the Kapinus Family Trust collectively as "Kapinus." Joseph and Karen Nartowicz are joined on appeal by Gina and Robert Newell as defendants-appellants. For ease of reading, we use "Nartowicz" to refer to arguments made by Joseph and Karen Nartowicz (and others who joined them as defendants) in the circuit court and by the Nartowiczes and the Newells on appeal. When discussing the involvement of Joseph and Karen Nartowicz in the underlying factual dispute, we use "the Nartowiczes."

that is only in the nature of an easement.  Therefore, Kapinus argued, the Nartowicz pier is unlawful and both a public and private nuisance because the pier is placed by a non-riparian owner pursuant to an easement and it is undisputed that the pier fails to meet the requirements of WIS. STAT. § 30.131, which prohibits a non-riparian owner from placing a pier pursuant to an easement on riparian land unless certain requirements are met.[3]

¶3      Nartowicz argued in a cross-motion for summary judgment, as Nartowicz argues now on appeal, that a notation in the 1911 plat which "reserved" the lake access lots for the use of the lot owners was a "dedication" that effectively conveyed to all of the lot owners fee simple title ("fee title") in the lake access lots. Accordingly, Nartowicz argued, by virtue of their holding fee title to the lake access lots, the lot owners are all riparian owners, and riparian ownership carries with it the right to install and maintain piers at the shoreline of the lake access lots.  *See Town of East Troy v. Flynn*, 169 Wis. 2d 330, 338, 485 N.W.2d 415 (Ct. App. 1992) ("Because each subdivision owner has a fee simple title in Beulah Alley, each owner is a riparian owner.").  As a result, Nartowicz contended, WIS. STAT. § 30.131, which governs the placement of piers by non-riparian owners, is inapplicable.

¶4      The circuit court granted Kapinus's motion and denied Nartowicz's motion, ruling that Nartowicz and the rest of the lot owners have an interest in the

---

[3] Riparian land is land that is "adjacent to navigable waters," and a riparian owner is one who holds title to riparian land.  WIS. ADMIN. CODE § NR 326.03(10) (March 2022); *Wendt v. Blazek*, 2001 WI App 91, ¶9, 242 Wis. 2d 722, 626 N.W.2d 78.  As we discuss in greater detail below, "riparian rights" refers to "the bundle of rights conferred upon a [riparian owner] by virtue of [the riparian land's] contiguity to a body of water." *Mayer v. Grueber*, 29 Wis. 2d 168, 174, 138 N.W.2d 197 (1965).

All references to the Wisconsin Administrative Code are to the March 2022 register.

lake access lots that is only in the nature of an easement, and therefore any pier installed at the shoreline of the lake access lots is unlawful under WIS. STAT. § 30.131. On the same ground, the court ruled that the Nartowicz pier is both a private and public nuisance.

¶5 We conclude from the language in the plat notation that the plat drafter intended to convey to the lot owners an interest in the lake access lots that is only in the nature of an easement. Accordingly, we affirm.

## BACKGROUND

¶6 The following facts are undisputed. The plat of Wa-che-etcha ("the plat") was recorded on June 3, 1911, and created thirty residential lots as well as the three lake access lots labeled A, B, and C. The thirty residential lots are separated into three blocks on the plat. Blocks one and two contain a total of seventeen lots, and each lot has frontage on Lake Waubesa. We refer to these lots as the "riparian lots" and to the owners of these lots as the "riparian owners." Block three of the plat contains the remaining thirteen lots, none of which have any lake frontage. We refer to these lots as the "non-riparian lots" and to the owners of these lots as the "non-riparian owners."

¶7 The three lake access lots are thin strips of riparian land that provide access to Lake Waubesa from the street that separates the riparian lots in blocks one and two from the non-riparian lots in block three. Each lake access lot extends from the street to the lakeshore and is four feet wide, except that lots A and C widen to ten feet at the lakeshore and lot B widens to fourteen feet at the lakeshore. The 1911 plat contains the following notation regarding the lake access lots: "Lots A, B, and C are reserved for the use of lot owners in this plat only, including boat house and pier privileges for said lot owners."

¶8　　In 2018, Kapinus acquired title to a riparian lot (the "Kapinus lot") immediately north of lake access lot B, where the Nartowicz pier was seasonally installed.　The Kapinus lot was separated from lot B by a three-foot wide strip of land.　In 2019, Kapinus acquired the three-foot wide strip of land so that the Kapinus lot shares its southerly boundary with lot B.[4]

¶9　　The property owned by the Nartowiczes is a non-riparian lot located in block three of the plat.　The Nartowiczes have been seasonally installing, maintaining, and using the Nartowicz pier at the shoreline of lot B since 1983.[5]

¶10　　The Nartowicz pier that was installed at the shoreline of lot B in 2018, 2019, and 2020 extended beyond the northern boundary of the "riparian zone" of lot B and into the "riparian zone" of the Kapinus lot.[6]　Kapinus filed a complaint against the Nartowiczes in May 2020, alleging causes of action for private nuisance, public nuisance, and trespass, and seeking declaratory judgment.

---

[4] After Jack and Renee Kapinus bought the Kapinus lot, they conveyed the lot to themselves as trustees of the Kapinus Family Trust.　They are parties to this action as individuals and in their capacity as trustees.

[5] The Nartowiczes rented the property that they now own for two years beginning in 1983, later purchasing the property in 1985.　Since 1983, the Nartowiczes and various neighbors have shared the cost of installing and maintaining the Nartowicz pier at the shoreline of lot B.

[6] "'Riparian zone' means the area that extends from riparian land waterward to the line of navigation as determined by a method that establishes riparian zone lines between adjacent riparian owners in a manner that equitably apportions access to the line of navigation." WIS. STAT. § 30.01(5r).　"'Line of navigation' means the depth of a navigable water that is the greater of the following:  (a) Three feet, as measured at summer low levels[;] (b) The depth required to operate a boat on the navigable water." WIS. STAT. § 30.01(3c).　The riparian zone constitutes "a course of access to [the line of navigation] exclusive of every other owner." *Borsellino v. Kole*, 168 Wis. 2d 611, 617, 484 N.W.2d 564, 567 (Ct. App. 1992).

¶11    The Nartowiczes moved to dismiss based on Kapinus's failure to join necessary and indispensable parties.  The circuit court dismissed the action and required Kapinus, if Kapinus was to proceed, to file an amended complaint naming all of the lot owners as defendants.  Of the total thirty-two lot owners later joined as defendants, nineteen did not participate in the case; they either defaulted or were dismissed on a stipulation to be bound by the outcome of the case.

¶12    Kapinus filed a motion for summary judgment and a statement of proposed undisputed facts.[7]  In the motion, Kapinus asserted that the seasonally installed Nartowicz pier at the shoreline of lot B is unlawful for failure to satisfy all six requirements of WIS. STAT. § 30.131.[8]

---

[7] Kapinus moved for summary judgment on all claims except for the claim of trespass, which Kapinus later withdrew and asked the circuit court to dismiss without prejudice.

[8] WISCONSIN STAT. § 30.131 allows for existing piers to be maintained by non-riparian owners if the following six requirements are met, which focus on the existence, and terms, of a valid easement:

> (1)  Notwithstanding s. 30.133, a wharf or pier of the type which does not require a permit under ss. 30.12 (1) and 30.13 that abuts riparian land and that is placed in a navigable water by a person other than the owner of the riparian land may not be considered to be an unlawful structure on the grounds that it is not placed and maintained by the owner if all of the following requirements are met:

> (a) The owner of the riparian land or the owner's predecessor in interest entered into a written easement that was recorded before December 31, 1986, and that authorizes access to the shore to a person who is not an owner of the riparian land.

> (b)  The person to whom the easement was granted or that person's successor in interest is the person who places and maintains the wharf or pier.

¶13     Of the remaining fifteen defendants who were not dismissed from the action, eleven filed a joint response opposing Kapinus's motion for summary judgment and making a cross-motion for summary judgment. Those eleven defendants included the Nartowiczes and the Newells.[9] In the cross-motion for summary judgment, Nartowicz did not dispute any of the proposed undisputed facts filed by Kapinus. Nartowicz also did not dispute Kapinus's argument that the seasonal pier cannot satisfy the requirements of WIS. STAT. § 31.131 in order to be "grandfathered in" as a lawful pier installed by non-riparian owners pursuant to an easement. Rather, Nartowicz argued that the plat notation regarding the lake access lots "dedicated" the lake access lots to the owners of all of the lots in the plat, which had the effect of transferring fee title to them. Accordingly, Nartowicz argued, because each lot owner is a riparian owner of the lake access lots, each lot owner has the right to install and maintain piers at the shorelines of those lots.

---

(c) The placement and maintenance of the wharf or pier is not prohibited by and is not inconsistent with the terms of the written easement.

(d) The wharf or pier has been placed seasonally in the same location at least once every 4 years since the written easement described in par. (a) was recorded.

(e) The wharf or pier is substantially the same size and configuration as it was on April 28, 1990, or during its last placement before April 28, 1990, whichever is later.

(f) The placement of the wharf or pier complies with the provisions of this chapter, with any rules promulgated under this chapter and with any applicable municipal regulations or ordinances.

[9] Four defendants did not join the cross-motion filed by Nartowicz. Of those four, three filed a separate response to both motions for summary judgment, supporting the motion filed by Kapinus.

¶14    In reply, Kapinus argued that, because Nartowicz did not dispute any of the proposed undisputed facts, only one question of law remained:  whether the plat notation regarding the lake access lots conveyed ownership of the lake access lots to the lot owners (which would allow any lot owner to install a pier as a riparian owner of the lake access lots) or instead merely conveyed an interest in the lake access lots that is in the nature of an easement.  Kapinus argued that the plat conveyed an interest that is only in the nature of an easement and that, because Nartowicz did not dispute that the six requirements of WIS. STAT. § 30.131 are not met, the easement does not include the right to install and maintain piers at the shoreline of the lake access lots.

¶15    At the hearing on the cross-motions for summary judgment, the parties agreed that there were no disputes of material fact and that only questions of law remained.  The parties also agreed that, because none of the piers at the shoreline of the lake access lots, including the Nartowicz pier, meet the requirements to be "grandfathered in" under WIS. STAT. § 30.131, if the circuit court concluded that the plat conveyed an interest that is only in the nature of an easement, the piers would be unlawful and summary judgment should be granted for Kapinus.

¶16    The circuit court granted Kapinus's motion for summary judgment and denied Nartowicz's motion.

¶17    This appeal follows.

**DISCUSSION**

¶18    "Whether the circuit court properly granted summary judgment is a question of law that this court reviews de novo." ***Schmidt v. Northern States Power Co.***, 2007 WI 136, ¶24, 305 Wis. 2d 538, 742 N.W.2d 294.  "Summary judgment is

appropriate where there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." ***Pinter v. Village of Stetsonville***, 2019 WI 74, ¶26, 387 Wis. 2d 475, 929 N.W.2d 547; WIS. STAT. § 802.08(2).

¶19    We first state pertinent legal principles.  We then explain our conclusion, based on our interpretation of the language in the plat notation, that the plat drafter intended to convey to the lot owners an interest in the lake access lots that is only in the nature of an easement.  We address Nartowicz's arguments to the contrary in the course of our analysis.

## I.  Pertinent Legal Principles

### *A.  Interpretation of Plat Notation*

¶20    The issue on appeal, whether the lot owners within the subdivision hold title to the lake access lots or have an interest in the lake access lots that is only in the nature of an easement, depends on an interpretation of the notation in the plat which "reserved" the lake access lots "for the use of the lot owners in this plat only, including boat house and pier privileges for said lot owners."[10]  We look to the instrument of conveyance, here, the plat notation, in construing the rights of the lot owners.  ***Konneker v. Romano***, 2010 WI 65, ¶26, 326 Wis. 2d 268 (construing a deed).  "'Deeds are construed as are other instruments'; accordingly, 'the purpose of the court is to ascertain the intention of the parties.'  The primary source of the parties' intent is what is written within the four corners of the deed." ***Id.*** (quoted

---

[10] Neither the facts of this case nor the parties' arguments concern "boat house" privileges; accordingly, our analysis focuses solely on the plat notation's reference to pier privileges.

source omitted). If the language is unambiguous, we ascertain the parties' intent from that language alone without resorting to extrinsic evidence. *Id.*

¶21 "The threshold inquiry of whether a deed is ambiguous presents a question of law that this court reviews independently. The construction of an unambiguous deed is likewise a question of law. However, if the language of the deed is ambiguous, then the intent behind the language presents a question of fact." *Id.*, ¶23 (citations omitted); *see also* ***Solowicz v. Forward Geneva Nat'l., LLC***, 2010 WI 20, ¶13, 323 Wis. 2d 556, 780 N.W.2d 111 (the interpretation of "a written document affecting land … is a question of law that we review independently[.]"); ***Schimmels v. Noordover***, 2006 WI App 7, ¶10, 288 Wis. 2d 790, 709 N.W.2d 466 ("The meaning of unambiguous documents is a question of law which we review de novo.").

### *B. Riparian Rights and Easements*

¶22 "A riparian owner is one who holds title to land abutting a body of water. A riparian owner has certain rights based upon title to the ownership of such lands. These rights are not common to the citizens at large, but exist as natural and inherent incidents of the ownership of riparian land." ***Wendt v. Blazek***, 2001 WI App 91, ¶9, 242 Wis. 2d 722, 626 N.W.2d 78 (citations omitted). Pertinent here, riparian owners are entitled to "all of the 'amenities of waterfront property,' including the right to install and maintain a pier extending from their property." ***Movrich v. Lobermeier***, 2018 WI 9, ¶34, 379 Wis. 2d 269, 905 N.W.2d 807 (quoted source omitted).[11]

---

[11] *See also* WIS. STAT. § 31.132(2) (enacted by 2021 Wisconsin Act 47, effective June 20, 2021) ("An owner of land that abuts a navigable waterway is presumed to be a riparian owner and is entitled to exercise all rights afforded to a riparian owner, including the right to place a pier[.]").

¶23 As to non-riparian owners, prior to 1994 riparian rights could be conveyed by easement to non-riparian owners. *Konneker*, 326 Wis. 2d 268, ¶36. However, with the enactment of WIS. STAT. §§ 30.133 and 30.131 in 1994, "no owner of riparian land that abuts a navigable water may grant by an easement or by a similar conveyance any riparian right in the land to another person, except for the right to cross the land in order to have access to the navigable water." Sec. 30.133(1)(a); *see also Konneker*, 326 Wis. 2d 268, ¶36. A non-riparian owner may place and maintain a pier on riparian land only if he or she has a qualifying easement and pier under the requirements stated in § 30.131. *See Wendt*, 242 Wis. 2d 722, ¶13 (stating that § 30.131 pertains to the "lawfulness of a pier that is used or maintained under a non[-]riparian access easement").

¶24 Turning to the nature of easements, an easement can be created by any language expressing an intent to create an easement and "has been defined in Wisconsin as a liberty, privilege, or advantage in lands, without profit, and existing distinct from the ownership of the land." *Stoesser v. Shore Drive P'ship*, 172 Wis. 2d 660, 666 n.3 & 667, 494 N.W.2d 204 (1993), *superseded on other grounds by* WIS. STAT. § 30.133. When conveying riparian rights via easement, "title does not pass but only the right to a limited use of the land of another." *Id.*; *see also Konneker*, 326 Wis. 2d 268, ¶25 n.8 (quoting *Polebitzke v. John Week Lumber Co.*, 157 Wis. 377, 381, 147 N.W. 703 (1914)) ("Title does not pass to an easement holder, 'but only a right of use or privilege in the land of another.'").

### C. Platted Land and Private Access Ways

¶25 As noted, a plat is a "map of a subdivision." WIS. STAT. § 236.02(8).

> [T]he recording of the plat and conveyance of lots by the owner with reference to the plat *constitute[s] the granting of an easement to the purchasers of lots within the subdivision*

11

> *to ingress and egress over said private roadway* in common with other lot owners, and the original proprietors and their grantees are estopped to deny the legal existence of such rights of ingress and egress.

*Baurer v. Sokoloff*, 254 Wis. 273, 276, 36 N.W.2d 61 (1949) (emphasis added). The same principle was expressed in *Yurmanovich v. Johnston*, 19 Wis. 2d 494, 120 N.W.2d 707 (1963):

> By recording the plat showing routes giving access to the lake for use in common by the lot owners and by conveying the lots with reference to the plat and again providing that the grantee shall have access to the lake *constituted the granting of easements* to appellants who are purchasers of these lots.

*Id.* at 501 (emphasis added).

## II.  Analysis

¶26     To repeat, the plat notation regarding the lake access lots states in pertinent part, "Lots A, B and C are reserved for the use of the lot owners of this plat only, including … pier privileges for said lot owners."  As we now explain, we conclude that this language unambiguously indicates an intent to convey to the lot owners an interest in the lake access lots that is only in the nature of an easement. We base this conclusion on the language in the notation read as a whole, consistent with case law interpreting similar language.

### A.  Interpretation of Language in Notation

¶27     We begin with the key terms in the notation:  "reserved," "the use of," and "privileges."  The use of these terms in the notation echoes the language that Wisconsin courts have used to describe the rights conveyed via easement, namely, "*a right of use or privilege* in the land of another." *Konneker*, 326 Wis. 2d 268, ¶25 n.8 (emphasis added); *see also Stoesser*, 172 Wis. 2d at 667 ("An easement has been

defined in Wisconsin as a liberty, *privilege*, or advantage in lands, without profit, and existing distinct from the ownership of the land." (emphasis added)); ***Wendt***, 242 Wis. 2d at 728 ("An easement consists of two distinct property interests—the dominant, which enjoys the *privileges* granted by the easement, and the servient, which permits the exercise of those *privileges*." (emphasis added)). The use of these key terms here indicates that the notation conveyed to the lot owners an interest in the lake access lots—specifically, the "right of use or privilege," ***Konneker***, 326 Wis. 2d 268, ¶25 n.8, to access and place piers at the shoreline of the lake—which is only in the nature of an easement.

¶28 This interpretation is consistent with the interpretation of similar language in similar circumstances in other cases. For example, the plat notation at issue here is similar to the portion of a deed in ***Stoesser***, 172 Wis. 2d 660, which our supreme court stated was a valid easement conveying riparian rights.[12] *See **id.*** at 670. In ***Stoesser***, the pertinent portion of the deed provided:

> the parties of the first part *reserve* for themselves, their heirs and assigns and the owners in O-Ton-Kah Subdivision and any owners along the channel, *the use of the channel* as a means of ingress and egress, and also *reserving* to themselves and such owners, the right in common with the parties of the second part for themselves and guests *to use the lake shore for bathing, boating or kindred purposes* ....

***Id.*** at 664. Based on this language, the court stated that "[t]he subdivision owners did not become riparian owners based upon the easement; but they did obtain the right to use the [land at issue] to access Lake Beulah for bathing, boating and kindred purposes." ***Id.*** at 667.

---

[12] ***Stoesser*** was decided prior to the enactment of WIS. STAT. § 30.133 and thus it was still possible to convey riparian rights by an easement. ***Stoesser v. Shore Drive P'ship***, 172 Wis. 2d 660, 666 n.3 & 667, 494 N.W.2d 204 (1993).

13

¶29    There are numerous similarities between the language in the *Stoesser* deed and the plat in the present case. Both documents used the word "reserve" in conveying a right of access and in conveying certain specified riparian rights to the owners within the subdivision or plat. *See id.* Both documents also contained phrasing involving the word "use," suggesting that less than full title was conveyed: in *Stoesser*, "the *use* of the channel" was reserved as well as the right "to *use* the lake shore;" in the instant case, the lake access lots were reserved "for the *use* of the lot owners." Both documents also specified which riparian rights were being conveyed with the easement: in *Stoesser*, the deed included the right to use the land "for bathing, boating or kindred purposes," (but not pier privileges, *see id.* at 664) and, in the instant case, the plat included the right to use the lake access lots for "pier privileges." These similarities, together with the court's conclusion in *Stoesser* that the deed conveyed a right of access and certain specified riparian rights by an easement, confirm our interpretation of the plat notation as stated above.[13]

¶30    Further, the circumstances presented in this case are similar to those in *Yurmanovich*, 19 Wis. 2d 494, and *Schimmels*, 288 Wis. 2d 790. In both cases,

---

[13] Dictionary definitions of the key terms in the notation: "reserved," "the use of," and "privileges," are consistent with our interpretation of the plat notation as conveying an easement. The following are apt dictionary definitions. The verb "reserve" is defined as "to set aside." *Reserve*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/reserve, (last visited May 20, 2022). The noun "use" is defined as "the privilege or benefit of using something", and, alternatively, "the benefit or profit of property established in one other than the legal possessor." *Use*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/use, (last visited May 20, 2022). The noun "privilege" is defined as "a right or immunity granted as a peculiar benefit, advantage, or favor." *Privilege*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/privilege (last visited May 20, 2022). These apt definitions suggest that the phrase "for the use of" in the first part of the notation together with the term "privileges" in the second part, both as objects of the verb "reserved," means that the notation set aside for the lot owners the right, as a privilege, to use the lake access lots to access and place piers at the shoreline of the lake.

14

the court concluded that the plat created an interest in lake access routes in the nature of an easement.

¶31 In *Yurmanovich*, the original subdivider created a plat that showed certain routes for use by lot owners, giving them lake access. *Yurmanovich*, 19 Wis. 2d at 496. Certain deeds of conveyance expressly stated that the lot owners were to have access to the roads and to the bathing beach according to the recorded plat. *Id.* at 497. The court determined that "[a]lthough the routes are not designated as being easements in common to all the lot owners, the plat shows and the deeds indicate that the purpose of these routes was to give the lot owners rights of ingress and egress to the lake." *Id.* at 501. Further, the court emphasized that "recording the plat showing routes giving access to the lake for use in common by the lot owners and [] conveying the lots with reference to the plat and again providing that the grantee shall have access to the lake [together] constituted *the granting of easements* to appellants who are purchasers of these lots." *Id.* (emphasis added).

¶32 In *Schimmels*, a road provided the only access to a lake in a subdivision that was created by a plat, and the deeds incorporated the plat by reference. 288 Wis. 2d 790, ¶¶2-4. This court in *Schimmels* applied the reasoning in *Yurmanovich*, ruling that the lot owners possessed an easement for lake access over the lake access road as noted on the plat:

> We agree with the conclusion in *Yurmanovich* that "[b]y recording the plat showing routes giving access to the lake for use in common by the lot owners and by conveying the lots with reference to the plat and again providing that the grantee shall have access to the lake constituted the granting of easements to appellants who are purchasers of these lots." *Id.* at 501, 120 N.W.2d 707. Although Peterson's Plat does not specifically reference lake access, the Plat clearly includes a private road that provides the only lake access available to several lot owners. A platted private road that provides lake access adds value to the lot by the convenience and advantage it promises; thus, the Plat

15

> "secure[s] to the grantee a right of way over such platted streets."

*Schimmels*, 288 Wis. 2d 790, ¶13 (quoted source omitted). As in *Yurmanovich* and *Schimmels*, based on the unambiguous language in the notation here, the lake access lots are intended to be private routes for the lot owners to *use* to access the lake.

¶33     If, as argued by Nartowicz, the plat drafter intended to convey fee title to all of the lot owners rather than to convey an interest that is only in the nature of an easement, the second part of the notation ("including … pier privileges for said lot owners") would have been redundant. The conveyance of fee title to all of the lot owners would have made all of the lot owners riparian owners. *See Wendt*, 242 Wis. 2d 722, ¶9. As stated, the rights of riparian owners have long been understood to include the right to install piers on their riparian land. *See Stoesser*, 172 Wis. 2d. at 666 & n.2; *City of Janesville v. Carpenter*, 77 Wis. 288, 46 N.W. 128, 132 (1890) (citing *Jones v. Pettibone*, 2 Wis. 308; *Arnold v. Elmore*, 16 Wis. 509; *Yates v. Judd*, 18 Wis. 118; *Walker v. Shepardson*, 4 Wis. 486; *Improvement Co. v. Lyons*, 30 Wis. 61; *Delaplaine v. Railway Co.*, 42 Wis. 214; *Cohn v. Boom Co.*, 47 Wis. 314, 2 N.W. 546; *Boom Co. v. Reilly*, 46 Wis. 237; *Hazeltine v. Case*, 46 Wis. 391, 1 N.W. 66). There would have been no need to single out the "privilege[]" of maintaining a pier if the drafter intended to convey *all* rights of riparian ownership by making each lot owner an owner of the lake access lots.

¶34     Rather, the inclusion of the second part of the notation, "including … pier privileges for said lot owners," when considered in the context of the law at the time the plat was drafted, which allowed riparian rights to be conveyed by easement, *see Stoesser*, 172 Wis. 2d. at 670, confirmed the intent to create an easement that also conveyed riparian rights. *See Krause v. Massachusetts Bay Ins. Co.*, 161 Wis. 2d 711, 718, 468 N.W.2d 755 (Ct. App. 1991) ("It must be assumed that parties

to a contract had knowledge of the law in effect at the time of the agreement. This presumption includes both statutes and case law.") (citation omitted); ***Mnuk v. Harmony Homes, Inc.***, 2010 WI App 102, ¶24, 329 Wis. 2d 182, 790 N.W.2d 514 (stating that we construe written instruments with the purpose of ascertaining the intent of the parties at the time of the grant); ***Stoesser***, 172 Wis. 2d at 670 ("The rule that riparian rights can be conveyed by easement carries out the obvious intent of the parties who entered into lake access easements.").

¶35 The interest conveyed in the second part, specifying pier privileges, reinforces our conclusion. Without the second part, the plat may not have been as clear as to the easement's use and purpose. A reviewing court may not have been able to ascertain from the plat alone whether the drafter "intended the easement holder to have riparian rights, including the right to construct and maintain a pier[,]" thus requiring the court to look to extrinsic evidence to ascertain the drafter's intent. *See **Konneker***, 326 Wis. 2d 268, ¶30 (stating that when the deed granted "an easement 20 feet in width" on riparian land, but did not include any other indication of its intended use and purpose, it was not clear "whether the parties intended the easement holder to have riparian rights, including the right to construct and maintain a pier. Accordingly, the deed is ambiguous, and the court must resort to extrinsic evidence to ascertain the parties' intent."). Here, the inclusion of the second part, by its terms, unambiguously indicated the intent that the easement holders have the riparian rights to use the lake access lots to place piers. *See **Hunter v. McDonald***, 78 Wis. 2d 338, 343, 254 N.W.2d 282 (1977) ("[t]he use of the easement must be in accordance with and confined to the terms and purposes of the grant").

¶36 To the extent that Nartowicz argues that the word "reserved" is logically inconsistent with a grant of an easement, the law is to the contrary. *See **Stoesser***, 172 Wis. 2d at 664 (upholding an easement that was created by a deed

17

which "reserved" land for the use of the grantor and the owners of the subdivision); *Wendt*, 242 Wis. 2d at 724-25 (upholding an easement that was created by a deed which "reserved" a strip of land "for the purpose of access to [the lake].").

¶37 Nartowicz's main argument is that by using the word "reserved" the plat notation conveyed ownership of the lake access lots to all of the lot owners by "dedicating" the lots to them. We now explain why we are not persuaded by the legal authority that Nartowicz cites in support of this argument.

¶38 "Dedication is defined to be the act of giving or devoting property to some proper object, in such a way as to conclude the owner." *Kennedy v. Barnish*, 244 Wis. 137, 141, 11 N.W.2d 682 (1943). There are two types of dedication: statutory and common law. *See Cohn v. Town of Randall,* 2001 WI App 176, ¶6, 247 Wis. 2d 118, 633 N.W.2d 674.

> Statutory dedication consists in whatever conduct is prescribed by statute, which usually requires the execution and filing of a plat in accordance with local law. Common law dedication requires an explicit or implicit offer to dedicate land, and an acceptance of the offer by the municipality or by general public use. Intent to dedicate … is an essential component of either statutory or common law dedication ….

*Id.* (internal citations omitted).

¶39 Nartowicz argues that that the plat was a statutory dedication pursuant to WIS. STAT. § 2663 (1911), which provided:

> When any map shall have been made, certified, signed, acknowledged and recorded as above in this chapter prescribed every donation or grant to the public or any individual or individuals, religious society or societies, or to any corporation *marked or noted as such on said plat* or map shall be deemed in law and in equity a sufficient conveyance to vest the fee simple of all such parcel or parcels of land as are therein expressed and shall be considered to all intents

18

> and purposes a general warranty against such donor or donors, their heirs and representatives to the said donee or donees, grantee or grantees for his, her or their use for the uses and purposes therein expressed and intended and no other use or purpose whatever[.]

Sec. 2663 (1911) (emphasis added). Specifically, Nartowicz argues that the plat notation was a "mark or notation" that evidenced an intent to dedicate the land to the lot owners based on the notation's use of the word "reserve."[14] However, the legal authority that Nartowicz cites fails to support this argument in at least the following four respects.

¶40 First, much of the case law cited by Nartowicz is from other jurisdictions. In addition to being nonbinding, *see State v. Muckerheide*, 2007 WI 5, ¶7, 298 Wis. 2d 553, 560, 725 N.W.2d 930 (case law from other jurisdictions "is not binding precedent in Wisconsin, and a Wisconsin court is not required to follow it"), none of those cases are applicable to the facts in this case. In some instances, there are differences in state law as compared to Wisconsin law. In other instances, the foreign case involves land that was dedicated to the public for public purposes,

---

[14] Kapinus responds in part that WIS. STAT. § 2263 (1911) does not apply here because the plat notation used the word "reserved" not the statutory words "donat[ed] or grant[ed]." We need not and do not resolve the parties' dispute as to whether a reservation can only mean conveyance of an easement, as argued by Kapinus, or can also be "a legally recognized expression of an intent to dedicate [and] a natural expression of such intent," as argued by Nartowicz, in light of our discussion in the prior section of this opinion. Our interpretation of the language of the notation read as a whole, demonstrating that the drafter in this case intended to convey an interest in the lake access lots in the nature of an easement, is dispositive. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

such as public streets, parks, and the like, rather than private land purported to have been dedicated to a group of individuals for their private use.[15]

¶41     Second, the Wisconsin cases cited in support of Nartowicz's argument are similarly unpersuasive, because none of them (with one exception discussed below) address the kind of private dedication of land to individuals that Nartowicz asserts occurred in this case.

¶42     For example, Nartowicz cites **Williams v. Smith**, 22 Wis. 594 (1868), as a case in which, according to Nartowicz, "certain lands were 'Reserved Public Square' [which] effectuated a dedication."  However, no variation on the word "reserve" appears in the text of the case; rather, the court concluded that it was the labeling of a triangular piece of land on the plat as a "*public* square" that constituted a "good and valid dedication of this triangular piece of ground to the *public* use." *Id.* at 597-99 (emphasis added).

¶43     Nartowicz also cites **Barteau v. West**, 23 Wis. 416 (1868), as an example of a case in which, according to Nartowicz, a deed using the word "reserve"

---

[15] Nartowicz also mischaracterizes the pertinent statements of the courts in multiple cases. For example, Nartowicz asserts that in **Minton v. Smith**, 1924 OK 582, 227 P. 75, the "trial court found that strip marked in plat as 'North Boundary Reserve No. 2' was an *unambiguous* dedication." (Emphasis added).  However, the court clearly stated, "In our judgment the plat is *ambiguous*; the designation of the strip as 'Boundary Reserve No. 2'" and the other markings on the plat, "make[] the construction of the plat not clear and free from doubt." *Id.* at 77 (emphasis added).  The court reversed the circuit court's decision and remanded the case for a new trial as to whether the land in question had been dedicated to the public as a street. *Id.*

Nartowicz also asserts that in **Ross v. Dorsey**, 154 Id. 836, 303 P.3d 195, 198 (2013), the use of the word "reserve" in a deed was an expression of a *dedication*.  However, the court concluded that "substantial and competent evidence supported the district court's conclusion that the plat and the Deed privately dedicated the Buffer Strip as an *easement for the benefit of all lots.*" *Id.* at 844 (emphasis added).  Idaho law provides specifically for a private dedication of an easement. *See id.*  Failing to provide the context of the **Ross** court's use of the word "dedicate" misrepresents the significance of that case as to both the notation's use of the word "reserve" and Nartowicz's use of the word "dedicate" in the present case.

20

was evidence of dedication. However, our supreme court did not rely on the deed's use of the word "reserve" as evidence of dedication. *See id.* at 419. Rather, the court stated, "What stronger or better evidence could there be, that a dedication of a street had been made by the original owner, than conveyances from him in which *such street is recognized and lands are bounded by it*?" *Id.* (emphasis added). The operative fact identified by the court for its conclusion that the street was dedicated to the public was that the deed left space for a street to run through the two blocks of land. *Id.* at 419. Streets that are included on plats have long been recognized to be dedicated to public use independently of any use of the word "reserve." *See Pettibone v. Hamilton*, 40 Wis. 402, 414 (1876) ("the plat, and the conveyance of lots by the proprietors with reference to it, *constitute a valid dedication to the public use, of the streets and ways marked on the plat*, binding upon such proprietors, without any formal acceptance of such dedication by the public authorities."). Accordingly, the use of the word "reserve" in the deed at issue in *Barteau* does not support Nartowicz's argument based on the use of the word "reserve" here.

¶44     Nartowicz's reliance on *Schumski v. Village Of Hales Corners*, 14 Wis. 2d 301, 111 N.W.2d 88 (1961), fails for similar reasons. Our supreme court made clear that it was not the use of the word "reserving" in a deed which established that the land was dedicated to the public for "road purposes." *See id.* at 306. Instead, the way that the land was platted indicated that the land at issue was intended to serve as public streets running between newly divided lots of land. *See id.* at 302. *See also McKenzie v. Haines*, 123 Wis. 557, 102 N.W.33 (1905) (deed reserves land for a public highway).[16]

---

[16] Similarly, the Wisconsin statute cited by Nartowicz, WIS. STAT. § 66.1024, also does not support Nartowicz's argument because the statute addresses the dedication through reservation of lands "for street, highway, or alley purposes" as opposed to "creat[ing] a private way."

21

¶45 Third, the only case cited by Nartowicz in which a Wisconsin court in a published decision ruled that a subdivider conveyed fee title to individual lot owners within a plat (as opposed to making a dedication to the *public*) involved a previous record of conveyance supporting the court's conclusion, which is not present in the instant case. In *Town of E. Troy v. Flynn*, 169 Wis. 2d 330, 485 N.W.2d 415 (Ct. App. 1992), a strip of land called Beulah Alley was first deeded to "the different owners of Beulah Lake Park, their heirs and assigns." *Id.* at 333. The court stated that there was no dispute that "the 1912 deed conveyed fee simple title to the different subdivision owners." *Id.* at 337. Two years later, the same people who deeded Beulah Alley divided a seven-acre parcel of land into sixteen lots in a plat that contained the following language: "Beulah Alley designated on said Plat … is to be for the use of the owners of Beulah Lake Park only, in traveling from said Lot Ten Driveway to the shores of Beulah Lake." *Id.* at 333. The plat contained the following language: "Beulah Alley For the use of owners of Beulah Lake Park only." *Id.* Nartowicz relies on the court's statement in *Flynn* that the plat, which was "signed by all the different subdivision owners of Beulah Lake Park, *dedicated* the alley with a restriction to each individual subdivision owner[.]" *Id.* at 337 (emphasis added). However, the previous deed had already conveyed fee title of the Alley to the subdivision owners before the plat was recorded. In effect, the plat simply served to subdivide the land and add a use restriction to the ownership rights. *See id.* at 338. Here, there is no record of a prior conveyance of the lake access lots to the lot owners.

¶46 Fourth, much of Nartowicz's argument is devoted to the presentation of extrinsic evidence to "confirm that [the plat drafter] intended to dedicate the Lake Access Lots." However, the consideration of extrinsic evidence is neither proper nor necessary here, as explained in the discussion section above, because we have

concluded that the notation unambiguously conveyed an interest in the lake access lots in the nature of an easement. *See **Konneker***, 326 Wis. 2d 268, ¶¶23-26.

¶47 Nartowicz fails to provide any relevant and persuasive legal authority to support the argument that the word "reserve" here is evidence of an intent to convey by dedication title to the lake access lots to all of the lot owners within the plat.[17]

¶48 In sum, the language in the plat notation, interpreted consistently with case law interpreting similar language, unambiguously establishes that the drafter intended to convey an interest that is only in the nature of an easement. In light of the parties' concession that such an easement does not meet the requirements of WIS. STAT. § 30.131, the easement holders have no riparian rights attached to their easement and, therefore, any piers installed at the shoreline of the lake access lots by the lot owners are unlawful.[18]

---

[17] Nartowicz appears to suggest that the plat could also serve as intent to make a common law dedication. We reject whatever argument Nartowicz means to make in that regard for the same reasons that we reject the statutory dedication argument: a lack of legal authority supporting the proposition that the use of "reserve" in this notation evidences an intent to dedicate, which is required for both common law and statutory dedications. *See **Cohn v. Town of Randall***, 2001 WI App 176, ¶6, 247 Wis. 2d 118, 633 N.W.2d 674.

To the extent that we have not specifically addressed any arguments in Nartowicz's briefs, we have considered those arguments as best as we can discern them and deem them insufficiently supported or developed. *See **Libertarian Party of Wis. v. State***, 199 Wis. 2d 790, 801, 546 N.W.2d 424 (1996) (an appellate court need not discuss arguments that lack "sufficient merit to warrant individual attention"); *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (stating that this court may decline to address arguments that are not supported by relevant legal authority or are undeveloped).

[18] We observe that Nartowicz's appellate brief violates the Rules of Appellate Procedure in numerous respects. Notably, the brief includes citations to three unpublished per curiam opinions and incorrect citations to the record, and is missing pertinent portions of the circuit court's oral decision, contrary to WIS. STAT. § 809.23(3) and WIS. STAT. RULE 809.19(1)(d)-(e), and (2). We admonish counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

## CONCLUSION

¶49 For the reasons stated above, we conclude that the plat drafter intended to convey to the lot owners an interest in the lake access lots that is only in the nature of an easement. Accordingly, we affirm the decision of the circuit court granting summary judgment in favor of Kapinus.

*By the Court.*—Judgment affirmed.